310 So.2d 300 (1975)
THE FLORIDA BAR, Petitioner,
v.
Charles E. THOMSON, Respondent.
Nos. 42286, 42477.
Supreme Court of Florida.
January 29, 1975.
Rehearing Denied April 21, 1975.
Norman A. Faulkner, Staff Counsel, Wilson J. Foster, Jr., Asst. Staff Counsel, Tallahassee, for petitioner.
Joe M. Mitchell, Jr., for respondent.
PER CURIAM.
By petition for clarification of an order of this Court, we are asked to determine whether an attorney suspended from the practice of law may be permitted to work for a law firm as a law clerk or investigator during his suspension. We hold that, under the facts and circumstances of this case, he may.
The order sought to be clarified was rendered in The Florida Bar v. Thomson (Fla. 1973) 271 So.2d 758, in which we held in two separate grievance proceedings that Thomson should be suspended from the practice of law for a period of two years, with credit for the period of over one year during which he was improperly suspended by The Florida Bar for nonpayment of dues, and thereafter until such time as he demonstrated that his conduct would warrant removal of the suspension. In those proceedings, Thomson was found guilty of (1) conviction in Palm Beach County on two counts of obtaining property in return for worthless checks; (2) conviction in Polk County on three counts of issuing worthless checks; (3) conviction in Polk County on the charge of beating a board bill in the amount of $750.00; (4) actively practicing law during the years 1970 and 1971 while under suspension for failure to pay his Bar dues; (5) making false affidavits concerning his date of birth and his proper name; and (6) entering into a contract of employment with a client for professional services and failing to carry out that contract after being paid his fee. With regard to the latter offense, the prior decision of this Court directed that Thomson immediately pay $200.00 to the client in restitution for the fee received for the unsatisfied contract for professional services.
*301 Following his suspension, Thomson obtained employment as a law clerk with a firm in Vero Beach, Florida. While there, in his words, he "performed services for other attorneys". In this regard, Thomson alleges that he has "limited his functions exclusively to work of a preparatory nature such as research, taking statements of witnesses consistent with initial investigation of a case, assembling information for review, and like work that would enable the attorney-employer to carry a given matter to a conclusion through his own examination, approval, or additional effort". He adds that all of his activities have been performed under the direct supervision of the attorney-employer, and that he "has not held himself out to be an attorney, has not signed any pleadings or letters in behalf of any attorney, has made no court appearances, has had no direct contact with any client or given any legal advice to any client and has conducted himself in the sole role of research investigator for his employer".
Upon learning of Thomson's employment, the staff counsel of The Florida Bar contacted one of his attorney-employers and expressed the opinion that the stated arrangement with a suspended attorney was unethical. The Bar then advised Thomson's attorney-employer that it intended to file a grievance against him unless he ceased Thomson's employment or submitted the matter for a ruling by the Bar's Professional Ethics Committee. Thomson then filed the instant petition for clarification.
The Bar urges us to adopt and apply in the instant case its Ethics Committee's Opinion 65-69 (December 7, 1965). Without passing upon the propriety of that opinion, we think it is easily distinguished on the facts and not persuasive under the circumstances herein. There the issue was whether members of The Florida Bar might employ to do legal research on a "free lance" basis, without client contact, an attorney not admitted to practice in Florida and suspended from practice in another state for misappropriation of funds. The Committee recommended against such employment. Two critical differences with the instant case are readily apparent. First, in Opinion 65-69, the suspended attorney was not a salaried full-time employee of another attorney who was responsible for the suspended attorney but was presumably employed on a "free lance" or piecemeal basis with minimal, if any, supervision by those for whom he performed research services; in the instant case, Thomson is employed under the direct supervision of his attorney-employers who are responsible for his work. Second, in that case, the suspended attorney had not been admitted to practice in Florida and hence was not subject to the Code of Ethics then governing the conduct of attorneys in this state while he was so employed; here Thomson is a member of The Florida Bar, and, even while under suspension, remains subject to the Code of Professional Responsibility and the Integration Rule of The Florida Bar. See Rule 11.10(3), Integration Rule. As such, Thomson may be disciplined by the Bar if he exceeds or abuses his employment.
The Bar contends that to permit Thomson's employment as a law clerk or investigator would be detrimental to the integrity and reputation of the Bar by inviting the public's misunderstanding of the disciplinary action taken against him. The Bar also submits that to allow such employment leaves too much room for abuse of this Court's previous order herein. In support thereof, the Bar cites Crawford v. State Bar of California (1960), 54 Cal.2d 659, 7 Cal. Rptr. 746, 355 P.2d 490, which is patently inapplicable to the instant case inasmuch as the facts therein were grossly at variance with those sub judice. In Crawford, an attorney sought the annulment of a resolution of the California Bar's Board of Governors to publicly reprove him for aiding and abetting his disbarred father in the unauthorized practice of law. There, after the Board of Governors recommended the father's disbarment, the father *302 and son formed a partnership from which the profits were to be divided equally. After the father was disbarred, he kept the same office and secretary and continued his practice as a tax consultant, conferring directly with clients with respect to the preparation of deeds and birth certificates, probate matters, escrows, real estate deals, mining claims and dissolution of a partnership, all the time continuing to divide the partnership profits equally. After disbarment, the father and son changed their office window sign to "Crawford & Crawford  Attorney at Law  Tax Consultant", used a single telephone number, address and bank account, and maintained only one set of business records. The son argued that the acts performed by his father were not improper because they might have been performed by a law clerk. The court considered the entire pattern of conduct and found it constituted the unauthorized practice of law.
In the instant case, Thomson alleges that prior to suspension his entire income was generated by the practice of law and that upon suspension his income ceased. He avers that non-attorney potential employers were discouraged from employing him because of the short term (less than one year) of such prospective employment and the natural suspicion arising from his suspension from The Florida Bar. Under these circumstances, he sought in good faith to perform the aforementioned services for members of The Florida Bar for the purposes of supporting himself and his family and furthering his legal training while awaiting termination of his suspension. In support thereof, Thomson urges that the activities of a law clerk do not constitute the practice of law so long as they are limited to work of a preparatory nature such as research and investigation of details, assembly of data and similar work to enable an attorney-employer to carry a given matter to a conclusion through his own examination, approval or additional effort. See Ferris v. Snively (1933); 172 Wash. 167, 19 P.2d 942. We also find the services allegedly performed by Thomson in his capacity as a law clerk or investigator similar in nature to those performed by paraprofessionals or paralegals in this state and elsewhere. See Emerging Work of Paralegals, 48 Fla.B.J. 742 (1974); Cassedy, "The Legal Paraprofessional," 48 Fla.B.J. 510 (1974); Haemmel, "Paralegals/Legal Assistants  Five Years of Development & Growth," Case & Comment, November-December, 1974, at 32.
Recognizing the risks of Thomson's employment urged upon us by the Bar, including the "risk" of violation of the order in question, we think that to adopt the Bar's position in the instant circumstances would be unduly harsh to him. We note that the Bar has failed to refute Thomson's allegations that his work as a law clerk or investigator has been limited to those activities described in his petition.
Thus, we think Thomson should not be prohibited from the employment herein described as a law clerk or investigator for members in good standing of The Florida Bar inasmuch as such employment is clearly beneficial to him, his family, his attorney-employers, the public, and the Bar as a whole upon his eventual reinstatement to good standing. Employment of Thomson in a supervised status within the profession seems to us to be an almost ideal manner in which he may demonstrate during his suspension his potential for rehabilitation and maintain his competency to practice law upon reinstatement. What better way is there for him to keep abreast of the law, particularly in view of the fact that the Bar now requires, in certain circumstances, as a condition precedent to termination of suspension or disbarment satisfactory passage of the Bar examination to show familiarity with the law and present ability to resume practice. If at any time during his suspension Thomson oversteps his employment and engages in unethical professional conduct or the unauthorized practice of law, he risks further disciplinary proceedings on specific charges. We find this *303 course preferable to the Bar's suggestion of a blanket prohibition against Thomson's law clerking in order to avoid potential harm.
On careful consideration of both Thomson's petition and the Bar's response, we find that he may continue his limited employment under supervision as herein described unless and until he is found to have engaged in unethical professional conduct or the unauthorized practice of law which may be raised at any time during his suspension.
It is so ordered.
ADKINS, C.J., and ROBERTS, McCAIN and ERVIN (Retired), JJ., concur.
OVERTON, J., dissents with opinion.
OVERTON, Justice (dissenting).
I dissent. The practical effect of allowing unrestricted law office employment of suspended or disbarred lawyers clearly reduces the effect of any order of suspension or disbarment and is another step to effectively dilute the punishment.[1]
To the layman, the difference between mere clerking and the unrestrained practice of law is not readily apparent. He observes an attorney, supposedly under suspension for unethical conduct, walking into law offices; necessarily he must wonder whether the attorney is indeed being disciplined. This confusion is compounded when the disciplined attorney is interviewing witnesses as an investigator on behalf of the law firm or otherwise discussing cases with clients. The resulting detriment to the integrity and reputation of the Bar is obvious, particularly when the community where the petitioner clerks is not metropolitan in nature. I am also concerned that the attorney who is suspended or disbarred for unethical conduct, upon returning to a law office, will encounter difficulty in confining himself to strictly preparatory functions.
It is the petitioner's contention that if unlicensed law students may serve as law clerks, so, too, should suspended attorneys, particularly where clerking represents the suspended attorney's sole source of income. Where the attorney has been suspended for reasons unrelated to a breach of ethical conduct in an abuse of a client, this argument has some merit. But where the attorney has been suspended for cheating a client or similar unethical conduct, petitioner's argument is flawed in that it fails to consider the interest of the public and the Bar.
I recognize that Henry S. Drinker, in his book "Legal Ethics," discusses the "lenient view" which allows a lawyer who has been suspended or not permanently disbarred to be cautiously employed by a firm in good standing, provided the suspended lawyer has no contact with clients or court proceedings and, further, that the nature of the offense committed was not one where clients had been abused.[2] One of the offenses for which the petitioner was suspended concerned an abuse of a client and, therefore, he would not even qualify under this "lenient view."
I do not oppose rehabilitative programs and would support such a program for suspended attorneys if it were structured to require (1) control of the specific place of employment and (2) supervision of the employment by the local grievance committee. I believe the public is at least entitled to that protection. I oppose any relief for a disbarred lawyer.
Under our present rules, I would hold that where an attorney is suspended or disbarred for unethical conduct, he should not be employed as a clerk for an attorney or law firm in this state during the period of this suspension or disbarment.
NOTES
[1] The Florida Bar Re: Harold Turk, Case No. 45,978, Opinion filed January 22, 1975; not yet reported, Overton, J., dissenting, where the majority opinion allowed a disbarred lawyer relief from having to retake the Bar examination.
[2] Drinker, Legal Ethics, at 52-53.