**In Re Ronald T. MITCHELL, Esq.**

**In Re Stafford A. HILAIRE, Esq.**

**Misc. Nos. 86–8018, 89–8072.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Dec. 27, 1989.

Decided April 18, 1990.

Ronald T. Mitchell and Stafford A. Hilaire, 5A Commandment Gade, St. Thomas, Virgin Islands, pro se.

Before SLOVITER, STAPLETON and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

This is an original proceeding in a discipline matter, in which we determine what restrictions are imposed on an attorney by an order of suspension from the bar of this court. We conclude that an attorney suspended from the bar of this court can have no contact with this court, its staff, or a client in any proceeding before this court, except if the attorney is representing only himself or herself as a party, but may act as a law clerk or legal assistant under the close supervision of a member in good standing of the bar of this court. This restriction applies to a suspended attorney until explicitly reinstated by order of this court, except in those cases in which the attorney has been suspended for six months or less and is automatically reinstated by filing an affidavit of compliance with the provisions of the order of suspension in accordance with Rule 12(1) of our Rules of Disciplinary Enforcement (1988), cited herein as Disc.R.

### Operative Facts

By our order in banc of June 26, 1986, we suspended Ronald T. Mitchell, a Virgin Islands attorney, from the bar of this court for two years.[1] The order provided that at the expiration of the two years, Mitchell could apply for reinstatement.[2] It does not

1. Mitchell has an extensive history of disciplinary proceedings before this court. On December 16, 1982, this court privately censured him for failure to file the brief and appendix in a timely manner in *Government of the Virgin Islands v. Frett*, 707 F.2d 1390, a direct criminal appeal. Mitchell was then suspended from the bar of this court from May 25, 1983, until December 31, 1983, for his dereliction and default in the representation of the appellee in a civil case, *Eastern Caribbean Corp. v. The West Indian Co., Ltd.*, 714 F.2d 121.

The current suspension was imposed for Mitchell's "representation" under the Criminal Justice Act of two defendants, one of whom was incarcerated (*Government of the Virgin Islands v. Derricks*, No. 85–3089; *Government of the Virgin Islands v. Douglas*, No. 85–3488). Mitchell failed to file timely briefs and appendices for the appellants, to answer the court's letters of inquiry, and to answer orders to show cause. Finally, on February 12, 1986, this court issued an order for Mitchell to show cause in writing by February 28, 1986, why he should not be disbarred, suspended, fined, or otherwise disciplined for his dereliction in the prosecution of the two appeals. He was also directed to appear at the bar of the Court on March 17, 1986.

Mitchell failed to reply in writing, and was suspended. He did appear in person on March 17. During the hearing, Mitchell attributed his difficulties to the amount of time he had been spending on a case which resulted in a very substantial settlement, to an understaffed law office, and to his own fear and inability to act on receiving the orders to show cause. Mitchell vowed at the hearing that his new financial security would support a more professional law practice. Mitchell urged that the court "impose some penalty which does not interrupt the ability to practice before [the court] for any substantial length of time." He suggested a fine of $5,000. He also requested that the court allow him to complete the briefing of the two appeals within *two* weeks. (He explained that the brief in *Derricks* had recently been sent by express mail to the Clerk's office.) The court granted Mitchell *three* weeks to complete the briefing in the two cases.

On March 17, 1986, the Clerk's office received an incomplete, non-conforming brief in *Derricks*. The Clerk advised Mitchell what corrections would be necessary, but no corrected copies were received. On April 25, 1986, eighteen days after the date set in the show cause hearing, the Clerk's office received a non-conforming brief and appendix in *Douglas*. The briefs submitted by Mitchell did not include such basic requirements as statements of subject matter and appellate jurisdiction, tables of cases, statements of related cases, proper pagination, and cross-referencing to the appendix.

2. The order also provided that Mitchell was fined $5,000, that he should be stricken from

appear, however, that Mitchell was suspended from the bar of the District Court of the Virgin Islands.[3]

On May 11, 1989, Mitchell applied for reinstatement as a member of our bar, citing the expiration of the two-year period as the sole justification for his reinstatement.[4] On July 5, 1989, we issued an order stating that Mitchell's application would be denied unless he submitted "a detailed affidavit setting forth facts showing there is reason to believe that the pattern of breaches of duty to clients and the court which led to [Mitchell's] suspension will not recur if his petition is granted." Mitchell subsequently withdrew his application for reinstatement.

On July 10, 1989, this court received a motion to reinstate the appeal from the District Court of the Virgin Islands in *Jeep Corporation v. Perkins*, No. 89–3269, which had been filed April 3, 1989, by Mitchell but had been dismissed on June 15, 1989, for failure of the appellant to prosecute the appeal in a timely manner by filing his brief and appendix. This motion was accompanied by affidavits dated July 5, 1989, of Mitchell and Stafford A. Hilaire, Esq., a Virgin Islands attorney who shares office space with Mitchell, which indicated that Mitchell, with Hilaire's assistance, was practicing law before this court.

In particular, Hilaire's affidavit set forth that on or about April 21, 1989, Mitchell informed him that the appeal could not be docketed under Mitchell's name unless and until he was reinstated, but that the Clerk's office would docket the appeal under Hilaire's name. Hilaire stated in the affidavit

that he "was agreeable to having the appeal listed under my name provided that Attorney Mitchell remained responsible for substantive work thereunder." Hilaire further stated that his next contact with the case was a letter from the Clerk's office, in which a jurisdictional question was raised. "This letter was answered by attorney Mitchell during my absence from [St. Thomas] on business." In this letter, which was dated May 30, 1989, Mitchell argued that the appeal was timely.

Mitchell said in his affidavit that he "was trial counsel and is the only attorney for the Appellant who has first-hand knowledge of the record below and to date." This was consistent with the May 30, 1989, letter in which Mitchell stated that "although the appeal in [*Jeep* ] is being carried under the name of Attorney Hilaire until the Court acts on my reinstatement ... *he has had no involvement with the case at all."* (Emphasis supplied.) In view of these affidavits we issued orders directed to Mitchell and Hilaire to show cause why they should not be disciplined, Mitchell for violating his suspension and Hilaire for aiding and abetting Mitchell in the violation.

### Issues Presented

The foregoing facts raise a number of questions regarding attorney discipline in this court:

1) What are the restrictions imposed by suspension from the bar of this court?

2) What are the restrictions and obligations with respect to this court in a relationship between a suspended at-

---

any Criminal Justice Act lists, and that he should not be assigned any Criminal Justice Act cases or appeals. Three judges dissented, contending that Mitchell's consistent violations of his duties to the court, creating a risk of unwarranted incarceration for those of his clients who were convicted of crimes, warranted nothing short of disbarment.

**3.** "[T]he admission of attorneys to practice before the District Court is placed, as an initial matter, before the District Court itself." *In re Snyder*, 472 U.S. 634, 643 n. 4, 105 S.Ct. 2874, 2880 n. 4, 86 L.Ed.2d 504 (1985). Thus, we have recognized that the district court has "an absolute and unfettered power ... to admit and to

discipline members of its bar independently of and separately from admission and disciplinary procedures of ... this court." *Matter of Abrams*, 521 F.2d 1094, 1101 (3d Cir.) (in banc), *cert. denied*, 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (1975).

**4.** The petition for reinstatement read in full:

Comes now Ronald T. Mitchell, and, pursuant to the provisions of the Order of this Court entered on June 26, 1986 in C.A.Misc.Mo. 86–8018, hereby applies for reinstatement as a member of the bar of this Court, the two year period of suspension of membership having expired in 1988.

torney and an attorney in good standing?

3) What must a suspended attorney show in order to be reinstated?

4) What are the responsibilities of an attorney who files an appearance in this court?

*Discussion*

■ We have inherent authority to suspend, disbar, or otherwise discipline a member of our bar for conduct unbecoming a member of the bar of this court. *In re Snyder*, 472 U.S. 634, 643, 105 S.Ct. 2874, 2880, 86 L.Ed.2d 504 (1985); *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 378–79, 18 L.Ed. 366 (1867); *see also Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 531, 6 L.Ed. 152 (1824) (Supreme Court will not interfere with Circuit or District Court's regulation of its own bar unless "the conduct of the Circuit or District Court was irregular, or was flagrantly improper."). This authority derives from the lawyer's role as an officer of this court. *Theard v. United States*, 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957); *see also People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 470–71, 162 N.E. 487, 489 (1928) (Cardozo, J.) (" 'Membership in the bar is a privilege burdened with conditions.' [*Matter of Rouss*, 221 N.Y. 81, 84, 116 N.E. 782, 783 (1917) ] [An attorney is] received into that ancient fellowship for more than private gain. He [becomes] an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice."). Authority to discipline members of our bar is also explicitly granted by Fed.R.App.P. 46(b) and (c). The purpose of such discipline is "to protect the public and the ad-ministration of justice from lawyers who have not discharged, will not discharge, or are unlikely to discharge their professional duties to clients, the public, the legal system, and the legal profession." American Bar Association, *Standards for Imposing Lawyer Sanctions*, Standard 1.1 (1986).

■ We may prescribe and enforce disciplinary rules for attorneys admitted to practice before us, *see Matter of Abrams*, 521 F.2d 1094, 1099 (3d Cir.) (in banc), *cert. denied*, 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (1975), and our disciplinary rules provide that "[d]iscipline may consist of ... suspension from practice before this Court...." Disc.R. 3(1). An order of suspension may be enforced under our inherent power of contempt, *Young v. U.S. ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787, 793–94, 107 S.Ct. 2124, 2130, 95 L.Ed.2d 740 (1987), and under Disc.R. 2(3), to which both Hilaire and Mitchell are subject.[5]

*Restrictions on a Suspended Attorney*

We have not previously defined the scope of the restrictions imposed by a suspension from the practice of law before this court and it appears that there is a dearth of federal court opinions addressing the disabilities of a suspended attorney. Likewise, the rule which authorizes United States Courts of Appeals to suspend an attorney, Fed.R.App.P. 46(b),[6] does not define suspension, nor is "suspension from practice before this court" defined by our Rules of Attorney Disciplinary Enforcement.

In an earlier case in which we lacked specific ethical standards, *In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157 (3d Cir.1984), *cert. denied*, 472 U.S.

---

**5.** Both Hilaire and Mitchell are members of the bar of this court and the fact that Mitchell is suspended does not alter that status. As noted in *State v. Schumacher*, 214 Kan. 1, 519 P.2d 1116 (1974), a suspended attorney "still holds his office as an attorney and is subject to the jurisdiction of the court. His former suspension operates simply to deprive him temporarily of the right to practice his profession" in this court. *Id.* at 10, 519 P.2d at 1122, *quoting In re Byrnes*, 97 Minn. 534, 105 N.W. 965 (1906). *See also State of Nebraska ex rel. Nebraska State Bar Ass'n v. Butterfield*, 172 Neb. 645, 648–49, 111 N.W.2d 543, 546 (1961) ("A suspended lawyer is ... under the same obligation to comply with the Canons of Professional Ethics as is a lawyer in active practice.").

**6.** While Fed.R.App.P. 46(c) speaks generally about the "Disciplinary Power of the Court over Attorneys," the Supreme Court has stated that "[t]he appropriate provision under which to consider the sanction of suspension [is] Federal Rule of Appellate Procedure 46(b), which by its terms deals with 'suspension or disbarment.' " *Snyder*, 472 U.S. at 643 n. 2, 105 S.Ct. at 2880 n. 2.

1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985), we stated that "the appropriate guidance for finding the current national standards of ethical norms lies in the standards promulgated by the American Bar Association." *Id.* at 160. However, the ABA 1979 *Standards for Lawyer Discipline and Disability Proceedings* do not define suspension and the 1986 ABA *Standards for Imposing Lawyer Sanctions*, which serve as a model for determining the appropriate sanctions for lawyer misconduct, simply define suspension as "the removal of a lawyer from the practice of law for a specified minimum period of time." Standard 2.3. Furthermore, while the commentary to the latter section suggests time periods for a suspension (no less than six months, no more than three years) and appropriate requirements for reinstatement, it is not particularly helpful to us as it does not define "the practice of law." [7] In fact, the prime sources of authority for determining the effect of a suspension are the opinions of state courts, though in considering them we, as a court of limited jurisdiction, must be mindful of our "slightly different concern in maintaining discipline than a state bar authorizing the general practice of law." *Petition of Olkon,* 605 F.Supp. 784, 792 (D.Minn.1985), *aff'd and remanded,* 795 F.2d 1379 (8th Cir.1986).

Not surprisingly, the state decisions deal with more than litigation in defining the practice of law and the consequence of a suspension, and indicate that the practice of law is not limited to appearances in court and the signing of pleadings. In *State of Nebraska ex rel. Nebraska State Bar Ass'n v. Butterfield,* 172 Neb. 645, 648, 111 N.W.2d 543, 546 (1961), the court defined the practice of law as "the giving of advice or the rendition of any sort of service by a person, firm or corporation when the giving of such advice or the rendition of such service requires the use of any degree of legal knowledge or skill." The court held that a suspended attorney who "drew deeds, mortgages, and releases, ... made out income tax returns ... drafted a will ... [and] drafted a power of attorney" was guilty of practicing law in violation of his suspension. *See also Cape May County Bar Ass'n v. Ludlam,* 45 N.J. 121, 211 A.2d 780 (1965).

In *State v. Schumacher,* 214 Kan. 1, 519 P.2d 1116 (1974), the Supreme Court of Kansas decided that the practice of law "includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court." *Id.* at 9, 519 P.2d at 1121. The court found a suspended attorney who continued to practice, with the sole exception that he did not make any formal appearances in court, was guilty of contempt. Thus, it suspended him indefinitely.

Many state court decisions hold that a suspension is violated when the attorney maintains public, visible signs of attorney status while under suspension.[8] We, however, are not directly concerned with that problem, since we do not regulate the general practice of law and there can be no doubt that a duly admitted attorney suspended only in this court may hold himself or herself out as an attorney, provided this holding out does not include a representa-

---

**7.** Of course, we only have disciplinary authority over practice before this court, and in some circumstances other federal courts in this circuit, as distinguished from the general authority over the practice of law held by a state court. *See* Cheatham, *The Reach of Federal Action Over the Profession of Law,* 18 Stan.L.Rev. 1288, 1289–90 (1966).

**8.** *See, e.g., Farnham v. State Bar,* 17 Cal.3d 605, 612, 131 Cal.Rptr. 661, 665, 552 P.2d 445, 449 (1976) (holding out by a suspended attorney that he is entitled to practice law, give legal advice and counsel); *Schumacher,* 214 Kan. at 3–5, 519 P.2d at 1118 (suspended attorney "re-

ferred" pending and new cases to other attorney and offered advice and provided information to other attorney from behind the bar during courtroom proceedings, conversed with clients and witnesses, personally served pleadings and other legal papers on court clerks and opposing counsel); *In re McInerney,* 389 Mass. 528, 536–37, 451 N.E.2d 401, 406 (1983) (maintaining telephone listing as lawyer); *State ex rel. Patton v. Marron,* 22 N.M. 632, 167 P. 9, 11 (1917) (maintaining an office with signs indicating that suspended individual is an attorney and using stationery and permitting a phone listing identifying individual as an attorney).

tion that he or she can practice in this court. This case, however, does raise the question of to what extent, if any, an attorney suspended from practice before this court may assist another attorney in a case before this court, effectively functioning as a law clerk or paralegal.

Attorneys charged with violations of suspensions frequently argue that they are only performing acts which may lawfully be performed by laymen. However, "[a] suspended lawyer is not the same as a layman. The public knows that he has a legal education, that he has engaged in the practice of law, and that his work and his opinions are presumably more valuable on that account." *Application of Christianson*, 215 N.W.2d 920, 925 (N.D.1974). *See also Matter of Discipline of Jorissen*, 391 N.W.2d 822, 825 (Minn.1986) ("Where the individual charged with unauthorized practice has had legal training, his activities are subject to even closer scrutiny."); *Butterfield*, 172 Neb. at 649, 111 N.W.2d at 546 (preparation of deeds, mortgages or income tax returns "is properly identified as the practice of law, whether or not it might under some other circumstances be properly performed by others not admitted to the bar. An order of suspension deprives the suspended lawyer from performing any service recognized as the practice of law and which is usually performed by lawyers in the active practice of law."). The court in *In re Lizotte*, 32 R.I. 386, 79 A. 960 (1911), noted that

> [w]hile it is true that persons who are not of the legal profession at times assume

to do the things which this respondent has done since his suspension, they do not, and would not be permitted to, so act in the guise of attorneys at law. Members of the bar who are under suspension will be required to comply with the terms of the decree suspending them in such a manner that there may be no ground for suspicion on the part of other members of the bar or of the public that the decrees of the court are not being exactly observed in their letter and their spirit.

*Id.* 79 A. at 961.

A number of jurisdictions permit suspended attorneys to act as law clerks, on condition that they have no contact with clients or courts.[9] In *The Florida Bar v. Thomson*, 310 So.2d 300 (Fla.1975), the Supreme Court of Florida permitted a suspended attorney to work as "a law clerk or investigator for members in good standing of The Florida Bar." *Id.* at 302. The attorney had assured the court that he had no contact with any client. The court reasoned that

> [e]mployment of [the suspended attorney] in a supervised status within the profession seems to us to be an almost ideal manner in which he may demonstrate during his suspension his potential for rehabilitation and maintain his competency to practice law upon reinstatement.

*Id.* at 302.[10]

Other jurisdictions which permit or have permitted suspended attorneys to work as

---

9. *See generally* cases cited in Annot., *Legal Services by Suspended Attorney*, 87 A.L.R.3d 279 (1978) and C. Wolfram, *Legal Ethics*, 130–31 (1986).

10. *See* H. Drinker, *Legal Ethics* 52–53 (1953). Drinker felt that a disbarred lawyer may not be employed in any capacity by a lawyer in good standing, "because such employment tempts and conduces to the violation of the plain intendment of any decree or order of disbarment," (quoting New York County Lawyers' Association, *Opinions of the Committee on Professional Ethics* No. 186 (1920)). However, a lawyer who had only been suspended might be employed by

> a firm in good standing ... the employer seeing to it that he had no contact with clients

nor with court attaches or proceedings. While the suspicion that a suspended employee is not trustworthy might, of course, be related to his employer, the latter's reputation might be sufficiently unassailable to risk this in order to watch over the suspended lawyer during his probationary period, which would be a distinct service to the court and to the bar.

The nature of the offense committed by the suspended or disbarred attorney would also seem to be important. For example, where one was disbarred for grossly abusing the process of the law, for repeatedly defrauding his clients, or for embezzling trust funds, he should obviously not be thereafter permitted to have anything whatever to do with the practice of law. It might be, however, that

law clerks include California,[11] Delaware,[12] Michigan,[13] Minnesota,[14] North Dakota,[15] Oregon [16], and possibly Pennsylvania.[17] On the other hand, in Illinois [18] and New Jersey [19], a suspended attorney may not act as a law clerk.

We will follow the majority of jurisdictions, and will permit a suspended attorney to work as a law clerk, with respect to matters in this court with no contact with clients or the court, under the close supervision of an attorney who is admitted to practice before us.[20] We agree with the Florida Supreme Court that this process would contribute to the rehabilitation of the suspended attorney, and we are satisfied that both the public and the court will be adequately protected by the restrictions on the suspended attorney's activities, and the fact that the attorney in good standing will be responsible for close su-

one could be suspended for an offense which would not incapacitate him from doing research and helping to prepare briefs in a large office, he having no contact with clients or courts; for example, because convicted of manslaughter by reckless driving when intoxicated, or of making statements disrespectful to the court.
H. Drinker, *Legal Ethics* at 53.

**11.** *See In re McKelvey,* 82 Cal.App. 426, 255 P. 834 (1927) (attorney did not violate suspension by working as an employee of other attorney performing research, drafting pleadings, and writing briefs; charge of giving advice to clients based on "incidental matters of ... slight importance." *But see Crawford v. State Bar of California,* 54 Cal.2d 659, 7 Cal.Rptr. 746, 355 P.2d 490, 495 (1960) (violation where suspended attorney acted independently, licensed attorney "merely had knowledge of [matters] but not of their progress or disposition.")

**12.** *See Matter of Frabizzio,* 508 A.2d 468 (Del. 1986) (suspended lawyer "may perform the tasks usually performed by law clerks and by paralegals ... except that he may not have direct contact as a law clerk or paralegal with clients, witnesses, or prospective witnesses.")

**13.** *See Grievance Administrator v. Chappell,* 418 Mich. 1202, 344 N.W.2d 1 (1984) (Attorney Discipline Board's power to suspend attorney does not include power to bar respondent from "working as an 'agent, clerk or employee' of a licensed attorney.")

**14.** *See Jorissen,* 391 N.W.2d at 825 (as long as the legal assistant's work is of a preparatory nature only, such as legal research and investigation, such that the work merges with that of the supervising attorney, it is not considered to be the practice of law.)

**15.** *See Christianson,* 215 N.W.2d at 926.

**16.** *See Oregon State Bar v. Lenske,* 284 Or. 23, 31, 584 P.2d 759, 763 (1978):
The composition and typing of legal documents, including contracts, by one not authorized to practice law, such as by a secretary, 'paralegal' assistant, law clerk—or a disbarred lawyer—for approval and signature by an attorney does not of itself constitute the practice of law ... [unless the disbarred attorney] is actually acting as the attorney for a client and is only using the attorney admitted to practice law as a 'front' to cover his own unauthorized practice of law.

**17.** *See Opinions of the Philadelphia Bar Ass'n Professional Guidance Committee* (1984) at Opinion 75–24, 26 (1975) (a suspended attorney may be hired by a law firm in light of the fact that he will subsequently be accorded an opportunity to indicate that he has been rehabilitated and that he has kept up with the law).

**18.** *See In re Kuta,* 86 Ill.2d 154, 161, 56 Ill.Dec. 56, 60, 427 N.E.2d 136, 140 (1981):
Without a doubt, a disbarred or suspended attorney should not serve as a law clerk or a paralegal during his disbarment or suspension. The line of demarcation between the work that a paralegal or a law clerk may do and those functions that can only be performed by an attorney is not always clear and distinct. The opportunity for a disbarred or suspended attorney who is serving as a paralegal or a law clerk to violate that line of demarcation is too great and too inviting.

**19.** *See* Rules Governing the Courts of the State of New Jersey, R. 1:21–8 (Prohibited Association):
No attorney shall, in connection with his law practice, employ, permit or authorize to perform services for him, or share or use office space with another who has been disbarred, transferred to 'disability inactive' status, or is under suspension from the practice of law, or whose resignation from the bar has been accepted by the Supreme Court.

**20.** We express no opinion on the question of whether an attorney who has been suspended from practice before this court and who has also been suspended from the practice of law in a state, such as New Jersey, which does not allow suspended attorneys to work as law clerks, would be allowed to work as a law clerk in a case before this court while present in that state. We suggest that an individual in that position would be well advised to petition for clarification of the order of suspension before engaging in such activity.

pervision. In addition, we think that in some cases the interests of the clients may be prejudiced if the suspended attorney cannot work as a law clerk, as that attorney may have participated in the trial of the matter, if not suspended in the district court, and may have insights helpful on the appeal. Of course, the admitted attorney cannot share his or her fee with the suspended attorney, any more than he or she could share the fee with a layman.[21]

### Obligations of Attorney in Good Standing

■ The admitted attorney must maintain actual, as well as formal, control of the case. The ABA Model Rules of Professional Conduct, Rule 5.5(b), note that "[a] lawyer shall not assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law." The comment to that section notes that "[p]aragraph (b) does not prohibit a lawyer from employing the services of paraprofessionals and delegating functions to them, *so long as the lawyer supervises the delegated work and retains responsibility for their work.*" (Emphasis supplied).

In *Crawford v. State Bar of California,* 54 Cal.2d 659, 668, 7 Cal.Rptr. 746, 751, 355 P.2d 490, 495 (1960), the California Supreme Court noted that the work of a law clerk, and by extension the work of a suspended or disbarred attorney acting as a law clerk, " 'must be such … as loses its separate identity and becomes merged in the product, of the attorney himself.' " The court disciplined an attorney because he permitted his father, a disbarred attorney with whom the attorney shared an office, to act independently in legal matters, of which the attorney "merely had knowledge of [their] existence … but not of their progress or disposition." *See also*

*In re Lacy,* 234 Mo.App. 71, 91–92, 112 S.W.2d 594, 606 (1937).

### Application of the Foregoing Rules in this Case

The facts of this case demonstrate clear violations of the rules regarding restrictions on the suspended attorney and the obligation of the attorney in good standing. According to Hilaire's affidavit of July 5, 1989, in support of the motion to reinstate the appeal in *Jeep Corporation v. Perkins,* he was aware that Mitchell was under suspension, and "was agreeable to having the appeal listed under my name provided that Attorney Mitchell remained *responsible* for substantive work thereunder." (Emphasis supplied). Furthermore, Hilaire indicated that he "turned over to Attorney Mitchell all correspondence concerning the appeal of which" he was aware.

In his affidavit of July 5, 1989, to reinstate the *Jeep* appeal, Mitchell stated that he "was trial counsel and is the *only* attorney for the Appellant who has first-hand knowledge below *and to date.*" (Emphasis supplied). In addition, in his response to the request from the clerk's office for comment on the possible jurisdictional defect, Mitchell submitted his letter of May 30, 1989, which stated

… Although the appeal in the above referenced case is being carried under the name of Attorney Hilaire until the Court acts on my reinstatement, … *he has had no involvement with the case at all.* As trial attorney of record, *I am the only one familiar with the record.*… (Emphasis supplied).

Furthermore, he argued in the letter why the appeal was timely.

We recognize that in his response of December 18, 1989, to the order to show cause of October 17, 1989, Hilaire explained that "I would be directly responsible for the prosecution of the appeal,

---

**21.** A suspended attorney who wishes to assist an attorney in good standing in a case before this court is obligated to inform the attorney of his suspension, the reasons for his suspension, and the restrictions on his ability to practice. By precluding the sharing of a fee we are not suggesting that if a suspended attorney is lawfully

engaged in an attorney's office as a law clerk in accordance with local practice or, if not locally suspended, is employed in an attorney's office as an attorney, he or she cannot be paid his or her ordinary salary or other remuneration by reason of working on an appeal in this court.

including signing all briefs, memoranda and correspondence as well as presentation of the appropriate oral argument, but Mitchell would assist me in making *all* necessary preparations therefore." (Emphasis supplied). We further acknowledge that in his response of December 18, 1989, to our order to show cause, Mitchell indicated that after he learned that he would have to be reinstated to prosecute the appeal, he ceased acting for the appellant in *Jeep* and indicated that he was only assisting Hilaire in the appeal as would a paralegal, law student, law graduate or attorney not admitted to the appellate bar.

■■■ We are not impressed with these responses to our orders to show cause. The affidavits of July 5, 1989, written before discipline was an issue, show that while the *Jeep* appeal was an ongoing matter Mitchell and Hilaire regarded the former as responsible for it and Hilaire as being uninvolved in the case. Indeed, Hilaire used the very word "responsible" to describe Mitchell's role in the appeal and Mitchell in his letter of May 30, 1989, stated that Hilaire had no involvement with the case at all. In fact, when Mitchell sent the letter to the clerk arguing that the appeal was timely, that was practicing law in this court, an act not justified by Hilaire's unavailability. In sum, the affidavits of July 5, 1989, and the conduct of Mitchell and Hilaire, clearly indicate that Mitchell was in control of the appeal, and negate any suggestion that Hilaire exercised supervision over it. Rather, Hilaire was acting simply as a "front" for Mitchell and we thus do not regard the responses to the orders to show cause as raising legitimate disputes of facts with respect to how the appeal had been earlier managed.[22]

■■■ Violations of these rules are grounds for discipline under this court's Rules of Attorney Disciplinary Enforce-

ment. Violation of an order of suspension is "conduct with respect to this court which violates ... orders ... of the Court," Disc.R. 2(3), and also constitutes a contempt of this court's order of suspension. An attorney in good standing who serves as a "front" for a suspended attorney, who undertakes to supervise the suspended attorney's work, but who freely permits his name to be used without exercising any supervision, is guilty of "conduct unbecoming a member of the bar of this Court," in violation of Disc.R. 2(4). Both the suspended attorney and the attorney acting as the front are guilty of "conduct that is prejudicial to the administration of justice" in violation of DR 1–102(A)(5) of the Code of Professional Responsibility and Rule 8.4(d) of the Rules of Professional Conduct.

### *Duty of an Attorney of Record*

■■■ In addition to our foregoing conclusions, we find Hilaire's understanding that the appeal could be listed under his name, while Mitchell "remained responsible for substantive work thereunder" untenable as it implies that an appearance on an appeal is a mere formality, without any substantive meaning. An attorney who files an appearance in this court accepts the responsibility to see to it that the litigation is conducted in accordance with the rules and orders of this court. *Cf. The Hilmon Co. (V.I.) Inc. v. Hyatt Int'l,* 899 F.2d 250 (3d Cir.1990) (holding attorney of record personally responsible for sanctions for frivolous appeal under Fed.App.P. 38). The fact that an attorney of record may make an agreement with some other person, attorney or layman, regarding a division of labor, does not diminish the attorney's *personal responsibility* for compliance with the rules of this court, *and liability for discipline if those rules are not complied with. See Matter of Withey,* 537 F.2d 324 (9th Cir.1976).[23]

---

**22.** An attorney in good standing in the district court is not prohibited by reason of his or her suspension from our bar from filing a notice of appeal in the district court. Fed.R.App.P. 4. However the written appearance on the appeal required by Rule 9(2) of our rules must be made by an attorney in good standing.

**23.** This personal responsibility is similar to that imposed under Fed.R.Civ.P. 11 on an attorney who signs a pleading. *See Pavelic & LeFlore v. Marvel Entertainment Group,* —— U.S. ——, ——, 110 S.Ct. 456, 460, 107 L.Ed.2d 438 (1989):

[T]he purpose of Rule 11 as a whole is to bring home to the individual signer his per-

Thus, even if Mitchell had not been suspended, Hilaire's understanding with him would not have been acceptable.

### The Disposition of this Case

■ Mitchell and Hilaire argue that the limitations on a lawyer suspended from practice in this court were unclear when they acted, that they truly believed that their actions were proper, and that their good faith in this regard is proven by the fact that they openly described their actions in their affidavits. We find enough merit in these contentions to conclude that they should not be disciplined. While Mitchell and Hilaire exhibited poor professional judgment, in that their conduct did not meet even the most lenient standard of supervision, given the novelty in the federal courts of the question of what activities a suspended attorney may perform, our ruling in this case will only apply to actions taken after the date of this opinion. *See Christianson*, 215 N.W.2d at 925. Accordingly, the orders to show cause will be discharged.

### Reinstatement

While we have determined that we should impose no discipline in this case, we nevertheless deem it appropriate to deal with Mitchell's contention, as set forth in his response of December 18, 1989, that "the Suspension Order did not address the consequences of lack of reinstatement upon the expiration of the prescribed two years." He seems to suggest that at the end of the two years he should "be regarded as unreinstated but not suspended." We decline the invitation to create a new disciplinary status.

■ The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) recommends that "a lawyer should not be permitted to return to practice until he has completed a reinstatement process demonstrating rehabilitation, compliance with all applicable discipline or disability orders and rules, and fitness to practice law." Standard 2.3. "In a reinstatement proceeding, the applicant bears the burden of establishing 'by clear and satisfactory evidence ... that [he] has undergone such a moral change as to now render him a fit person to enjoy the public confidence and trust once forfeited.'" *Olkon*, 605 F.Supp. at 787. Due to the vital societal interests at stake,[24] "any doubt" as to a petitioner's fitness to practice in a federal court should be "resolved in favor of the public." *See Matter of G.L.S.*, 586 F.Supp. 375, 379 (D.Md.), *aff'd*, 745 F.2d 856 (4th Cir.1984). *See In re Isserman*, 345 U.S. 286, 289, 73 S.Ct. 676, 677, 97 L.Ed. 1013 (1953), *judgment set aside on other grounds*, 348 U.S. 1, 75 S.Ct. 6, 99 L.Ed. 3 (1954). *See also Butterfield*, 172 Neb. at 650, 111 N.W.2d at 547 ("A suspended lawyer is required to affirmatively show ... that he will not in the future engage in any practices offensive to the practice of law."); *McKelvey*, 82 Cal.App. at 430, 255 P. at 836 ("'The petition for restoration should be

---

sonal, nondelegable responsibility.... [J]ust as the court expects the signer personally—and not some nameless person within his law firm—to validate the truth and legal reasonableness of the papers filed, so also it will visit upon him personally—and not his law firm—its retribution for failing in that responsibility.
*See also Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548, 558 (9th Cir.1986) ("An attorney who signs the pleading cannot simply delegate to forwarding co-counsel his duty of reasonable inquiry"), *cert. denied*, 484 U.S. 822, 823, 108 S.Ct. 83, 85, 98 L.Ed.2d 45, 47 (1987), *Harris v. Marsh*, 123 F.R.D. 204, 222 (E.D.N.C.1988) ("a lawyer cannot absolve himself of responsibility after he signs a pleading or document by claiming his role in the litigation or with respect to that filing was minor.... Where responsibility

for litigation is divided among several lawyers or law firms, counsel would be well advised to have only the attorney(s) responsible for the contents of the document sign it."), *Coburn Optical Industries v. Cilco, Inc.*, 610 F.Supp. 656 (M.D.N.C.1985) ("The Court expects local counsel who appear with attorneys not locally admitted to ensure that Local Rules and the Federal Rules of Civil Procedure are followed even when the pleading or motion is not prepared by them."); *Long v. Quantex Resources*, 108 F.R.D. 416 (S.D.N.Y.1985) (holding local counsel accountable for papers filed on behalf of foreign counsel), *aff'd. mem.*, 888 F.2d 1376 (2d Cir. 1989).

**24.** *See Snyder*, 472 U.S. at 644–45, 105 S.Ct. at 2881.

granted when, and only when, the court upon the case as presented to it is convinced by positive evidence that the applicant has established, and now possesses, that good moral character which will make of him a trustworthy and honorable member of the bar.' ").

Our Rules of Attorney Disciplinary Enforcement specify that

> An attorney suspended for six months or less is automatically reinstated at the end of the period of suspension upon the filing of an affidavit of compliance with the provisions of the order. An attorney suspended for more than six months or disbarred may not resume practice until reinstated by order of the court.

Disc.R. 12(1).

The period specified in an order of suspension for a period greater than six months is the minimum period before which the attorney may apply for reinstatement. Such an application is *not* automatically granted. The Rules explain:

> The Clerk refers petitions for reinstatement to the Standing Committee [on Attorney Discipline]. If the Standing Committee is satisfied that reinstatement is appropriate *based on the findings of another court or otherwise*, it recommends to the Court that the petition be granted. If the Standing Committee is not so satisfied or if the matter is returned to it by the Court, the Standing Committee schedules a prompt hearing on the petition. At the hearing, the petitioner has the burden of demonstrating by clear and convincing evidence that he or she has the moral qualifications, competency, and learning in the law required for admission to practice before this Court and that his or her resumption of the practice of law will not be detrimental to the integrity and standing of the bar or to the administration of justice, or subversive of the public interest.

Disc.R. 12(4) (emphasis supplied).

The rule requires that the petition demonstrate that reinstatement is appropriate.

If another court has found the applicant to be rehabilitated, a certified copy of the opinion of that court should be attached to the petition. If not, rehabilitation must be demonstrated by other means. Our order of July 5, 1989, regarding Mitchell's May 11, 1989, petition for reinstatement is illustrative. We required that he

> 5. ... submit ... a detailed affidavit setting forth facts showing there is reason to believe that the pattern of breaches of duty to clients and the court will not recur if his petition is granted.
>
> 6. The affidavit filed by petitioner should reflect
>
> (a) a description of petitioner's professional activities, if any, during the period of suspension,
>
> (b) a statement of whether petitioner has been disciplined or reinstated by any other court during that period, and, if so, the circumstances thereof,
>
> (c) a description of the circumstances under which petitioner is currently, or intends to be, practicing law including the professional or non-professional support available to him and the procedures, if any, in place to ensure that petitioner's responsibilities to the court and his clients will be met in a timely and professional manner, and
>
> (d) any other facts bearing on his fitness to practice before this court.

Items (a), (b), and (d) would be appropriate for any application for reinstatement. Item (c) was specifically tailored to the reasons that Mitchell was suspended. An attorney suspended for other reasons should provide information showing that the factors leading to his or her suspension would not reoccur.

### Conclusion

We hold that the only contact an attorney suspended from practice before this court may have with a case before this court (other than on his or her own behalf) is as a law clerk or legal assistant operat-

ing under the close supervision of a member in good standing of the bar of this court, and then only so long as the suspended attorney has no contact with clients, this Court, or its staff. While we believe that the conduct of Mitchell and Hilaire in this case violated even the most lenient standard of practice, we agree that until now the rules governing suspended attorneys in the practice of law were unclear. Accordingly, the Orders to Show Cause directed to Ronald T. Mitchell, Esq. and Stafford A. Hilaire, Esq. are discharged.[25]

---

**25.** This opinion has been submitted to all of the active judges of this court and the court has agreed that the orders to show cause should be discharged.