**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-2985

_____

IN THE MATTER OF RICHARD L. ABBOTT,
Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:23-mc-00524)
District Judge: Hon. Maryellen Noreika

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on July 8, 2025

Before: RESTREPO, BIBAS, and CHUNG, *Circuit Judges*

(Filed: July 11, 2025)

_____

OPINION*

_____

BIBAS, *Circuit Judge*.

Calling something a Soviet show trial does not make it so. Attorney Richard Abbott appeals the District Court's order disbarring him from practicing law in the District of Delaware. The District Court imposed that reciprocal discipline after Abbott was disbarred by the Delaware Supreme Court. On appeal, Abbott launches a battery of attacks against

_____

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

the District Court's decision, contending that the state proceeding gave him Soviet-style justice. But all his attacks misfire, so we will affirm.

This saga begins with shrubs. The Delaware Chancery Court ordered Abbott's client—and his successors, heirs, and assigns—to trim the shrubs on his properties. But Abbott's client did not want to. So Abbott told him that he would be "off the hook" if he transferred the land to his wife and then had her transfer it back after a few years. *In re Abbott*, 308 A.3d 1139, 1153–54 (Del. 2023). Abbott failed to tell the client that the order would bind his successors, heirs, and assigns. With Abbott's help, the client and his wife went ahead with the transfers. Later, the client testified that he had the same control over the properties as he did before the transfer. The presiding Vice Chancellor found that Abbott's sham transfer violated the Court's order, held him in contempt, and referred him to Delaware's Office of Disciplinary Counsel. That office then notified Abbott that it intended to investigate him.

Outraged, Abbott filed a bevy of lawsuits and ethical complaints against those involved. He alleged in filings that the Vice Chancellor had launched "a last minute, surprise Star Chamber proceeding" against him. *Id.* at 1158 (cleaned up). He claimed that the Vice Chancellor had "[p]sychological conditions," "concocted a fairytale story" to punish him for doing his job, and "manufacture[d] a record to further his diabolical plot to destroy" him. *Id.* at 1159–60. And he accused the disciplinary office of "acting in bad faith," succumbing to "the vindictive urging of the emotionally unhinged Vice Chancellor." *Id.* at 1160 (internal quotation marks omitted).

2

The disciplinary office then notified Abbott that it intended to present a petition to discipline him for violating four Delaware Lawyers' Rules of Professional Conduct. Abbott tried to nip the petition in the bud. He sent a motion to the justices of the Delaware Supreme Court, asking them to dismiss the proceedings and accusing them of turning "a blind eye to the corruption … infect[ing]" the disciplinary office. *Id.* at 1161. He then sued all of them and several disciplinary-office officials in federal district court, asserting claims under the Racketeer Influenced and Corrupt Organizations Act, 42 U.S.C. § 1983, and state law. The District Court dismissed all claims, and we affirmed. *Abbott v. Mette*, 2021 WL 5906146, at *1 (3d Cir. Dec. 14, 2021).

Eventually, a panel of the Board of Responsibility held a seven-day hearing, where Abbott testified and put on evidence and witnesses in his defense. The panel concluded that Abbott had violated multiple Delaware Lawyers' Rules of Professional Conduct. A majority of the panel recommended suspending him for two years, while the panel chair recommended disbarment. The Delaware Supreme Court opted to disbar him.

That triggered the federal District Court to act too. The District Court issued an order for Abbott to show cause why it should not impose the same penalty. *See* D. Del. L.R. 83.6(b)(1). Under the District Court's rules, reciprocal discipline was automatically imposed unless Abbott could show that (1) the state proceeding violated due process, (2) there was inadequate proof showing his misconduct, (3) imposing reciprocal discipline would work a grave injustice, or (4) the misconduct warranted "substantially different discipline" in federal court. D. Del. L.R. 83.6(b)(5). The first three elements track the federal requirements for imposing reciprocal discipline in federal court. *In re Surrick,* 338 F.3d 224, 231

3

(3d Cir. 2003). To avoid disbarment, Abbott had the burden of showing by clear and convincing evidence that one of those elements was met. *Id.* at 232. In a thorough opinion, the District Court found that Abbott had not carried his burden and should be disbarred in the District. Our review of that decision is "extremely limited." *Id.* (internal quotation marks omitted). We will reverse only if the District Court abused its discretion by making legal errors or clearly erroneous factual findings. *Id.*; *Adams v. Ford Motor Co.*, 653 F.3d 299, 304 (3d Cir. 2011). It did not.

*First,* the District Court did not err in holding that Abbott had gotten due process in the state proceedings. Abbott was notified of the misconduct charges against him, had the chance to file a response in writing, and put on testimony and witnesses at a hearing in his defense. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Abbott says he was barred from obtaining some of the discovery and witnesses that he wanted. But he sought discovery he was not entitled to, such as information about the mental state of judicial officers and privileged evidence. Due process does not entitle someone to all possible evidence that he wants. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 512 (1947) (privileging attorney work-product).

Abbott also contends that the proceeding was inherently prejudicial and unfair because it was motivated only by animus toward him. But there is no credible evidence of animus in the state-court record. Plus, Abbott says the Delaware Supreme Court refused to consider his federal and state RICO claims. But it did. It explained that Abbott failed to "properly assert[] any objections to the Panel's handling of" those claims, thus forfeiting the argument. *In re Abbott*, 308 A.3d at 1167 n.57.

Abbott also levies two rule-specific due-process challenges. For one, he says that the text of Delaware's Rule 3.5(d) did not give him fair notice that it had forbidden his conduct. Even if that goes to the fairness of the proceedings, Abbott's claim fails. Lawyers may not "engage in conduct intended to disrupt a tribunal or engag[ing] in undignified or discourteous conduct that is degrading to a tribunal." Del. Rules Pro. Conduct 3.5(d). Abbott has no credible argument that making degrading comments and levying unfounded accusations at members of a tribunal would not plausibly fall within the Rule. Next, he contends that the state proceedings did not give him fair notice about the basis for the charge under Rule 8.4(c), which bars dishonesty, fraud, deceit, and misrepresentation. But the disciplinary petition told him that he was accused of making two false statements about the property transfer in a letter to the Chancery Court. Abbott says those were just omissions. But even if they were, incomplete or misleading statements also violate the rule. *Id.* So Abbott got fair notice.

*Second*, the District Court did not err in concluding that Abbott had failed to carry his burden of providing sufficient proof that the state court's decision was infirm. *In re Surrick*, 338 F.3d at 231–32. On appeal, Abbott mainly tries to relitigate arguments that the Delaware Supreme Court rejected in determining that he had violated Delaware's Rules. But the District Court rightly deferred to the state Supreme Court as the expert on its rules and reviewed in detail the facts supporting each violation. So we discern no abuse of discretion.

*Third*, the District Court properly concluded that Abbott had failed to meet his burden of showing that reciprocal discipline would cause a grave injustice or that substantially different discipline was warranted. True, disbarment is a significant punishment. But in

5

deciding that Abbott's conduct warranted it, the Delaware Supreme Court used the exact same guide that we use "as a model for determining the appropriate sanctions for lawyer misconduct." *In re Mitchell*, 901 F.2d 1179, 1184 (3d Cir. 1990); *see In re Abbott*, 308 A.3d at 1166 (citing *ABA Standards for Imposing Lawyer Sanctions* (2005)). And after weighing the aggravating and mitigating circumstances, it found that disbarment was fitting. *In re Abbott*, 308 A.3d at 1186–88. So Abbott cannot show that imposing the same discipline in federal court is unjust.

Still, Abbott says the District Court erred because ABA Model Rule 3.5(d) does not perfectly track Delaware Rule 3.5(d). *See* D. Del. L.R. 83.6(d) ("[A]ll attorneys admitted or authorized to practice before this Court . . . shall be governed by the Model Rules."); *In re Mitchell*, 901 F.2d at 1187 (looking to the Model Rules to determine misconduct). The Delaware Rules bar "undignified or discourteous conduct" that degrades the tribunal, even if unintentionally. Del. Rules Pro. Conduct 3.5(d); *In re Abbott*, 308 A.3d at 1185 & n.159. By contrast, the Model Rules may bar such conduct, but only if it is done with the intent to disrupt the tribunal. Model Rules Pro. Conduct 3.5(d) & cmt. 4 (ABA 2020).

In any event, that distinction is immaterial. Abbott was disbarred in the state court not because he had violated Delaware Rule 3.5(d) but because he had violated Delaware Rule 3.4(c) and others like it that warrant presumptive disbarment. *In re Abbott*, 308 A.3d at 1184. Delaware Rule 3.4(c) tracks the Model Rules perfectly. *Compare* Del. Rules Pro. Conduct 3.4(c), *with* Model Rules Pro. Conduct 3.4(c). And the District Court expressly concluded that Abbott had failed to show, based on the "grave injustice" or "substantially different

6

discipline" prongs, that it should impose a different punishment for the Rule 3.4(c) violation. That was not an abuse of discretion.

Abbott also says the District Court should have considered that he has never been disciplined before in the District Court. But as the District Court noted, Abbott did not have a spotless record. He had earlier faced discipline by the Delaware bar.

Finally, Abbott raises two constitutional challenges. First, he argues that disciplining him for his speech violates the First Amendment. But that Amendment is consistent with disciplining a lawyer for baselessly attacking a judge. *In re Palmisano*, 70 F.3d 483, 487 (7th Cir. 1995). Second, he says his disbarment was selective prosecution in violation of the Equal Protection Clause. But the Delaware Supreme Court held that Abbott failed to raise any credible evidence supporting that claim. *In re Matter of Abbott*, 308 A.3d at 1181. Abbott does not meaningfully contest that holding. So the District Court did not abuse its discretion in finding that imposing the same punishment would not work a grave injustice.

We will thus affirm.