# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 07-8003 and No. 07-8007

In re James W. Stanley, Member of the Bar

Before KASOLD, HAGEL, and MOORMAN, *Judges.*

## O R D E R

PER CURIAM: Before the Court is the question of whether the conduct of James W. Stanley, an attorney and member of the Court's bar, violated the Court's Rules of Admission and Practice (Rules) and, if so, what, if any, discipline should be imposed. Mr. Stanley has been provided notice of the disciplinary action recommended by this Court's Committee on Admissions and Practice and has responded thereto. Although he denies any wrongdoing, Mr. Stanley requests that the Court extend its May 11, 2007, nondisciplinary suspension of his privilege to practice until pending administrative actions regarding discipline imposed by the Department of Veterans Affairs (VA) and his application for reinstatement to practice before the Social Security Administration are resolved. The Court will terminate the May 11, 2007, nondisciplinary suspension and will impose reciprocal discipline for professional misconduct for Mr. Stanley's suspension from practice before the Social Security Administration and for the revocation of his accreditation by VA. The Court will also impose public reprimands for Mr. Stanley's failure to notify the Court of his suspension from practice before the Social Security Administration and for the unauthorized practice of law before this Court during the period when he was suspended from practice before this Court.

## I. FACTS

### A. Background

Mr. Stanley has been subject to reciprocal discipline by at least two jurisdictions,[1] as well as a temporary nondisciplinary suspension by this Court. These actions were the result of the

---

[1] The Arkansas Supreme Court Committee on Professional Conduct and the U.S. District Court for the Eastern District of Arkansas.

suspension from or the revocation of his right to practice before two administrative agencies: An October 10, 2001, action by VA canceling Mr. Stanley's accreditation to provide legal representation in VA proceedings, and a May 22, 2006, suspension of Mr. Stanley's privilege to provide legal representation before the Social Security Administration. Both the revocation and the suspension were imposed after hearings in which Mr. Stanley participated.[2] Mr. Stanley did not report either of these actions to the Court.

VA determined that Mr. Stanley had charged and received illegal fees from four veterans in that he charged them fees for representation before VA prior to the first final decisions on their

---

[2] With respect to the Social Security Administration action, Mr. Stanley was suspended after one level of administrative review. *See* 20 C.F.R. § 404.1765(a) (2006) ("If the Deputy Commissioner for Disability and Income Security Programs . . . does not take action to withdraw the charges within 15 days after the date on which the representative filed an answer, [the Social Security Administration] will hold a hearing and make a decision on the charges."); 20 C.F.R. § 404.1775(a) (2006) ("After the hearing officer issues a decision, either the representative or the other party to the hearing may ask the Appeals Council to review the decision.").

VA cancelled Mr. Stanley's accreditation in accordance with the VA regulations in effect at the time of the cancellation. Those regulations provided, in relevant part:

> (e) As to cancellation of accreditation [for demanding or accepting unlawful compensation for preparing, presenting, prosecuting, or advising or consulting, concerning a claim], upon receipt of information from any source indicating failure to meet the requirements of [38 C.F.R.] § 14.629 [governing accreditation of attorneys], improper conduct, or incompetence, the Regional Counsel of jurisdiction shall initiate an inquiry into the matter.
> . . . .
>
> > (2) If the result of the inquiry justifies further action, the Regional Counsel shall take the following action:
> . . . .
>
> > > (ii) As to agents or attorneys, inform the General Counsel of the result of the inquiry and notify the agent or attorney of an intent to cancel accreditation. The notice will also state the reason(s) for the impending cancellation and inform the party of a right to request a hearing on the matter or to submit additional evidence within 10 working days of receipt of such notice. Such time may be extended for a reasonable period upon a showing of sufficient cause.
> . . . .
>
> (f) If a hearing is requested, a hearing officer will be appointed by the Director of the regional office involved. . . . The hearing officer shall submit the entire hearing transcript, any pertinent records or information, and a recommended finding to the Regional Counsel within 10 working days after the close of the hearing. The Regional Counsel will immediately forward the entire record to the General Counsel for decision.

38 C.F.R. § 14.633 (2001).

claims from the Board of Veterans' Appeals (Board).[3] In addition to being the basis for revocation of accreditation under 38 U.S.C. § 5904, charging an illegal fee is punishable as a misdemeanor. *See* 38 U.S.C. § 5905. Mr. Stanley appealed that decision to the Board, and Mr. Stanley has not informed the Court whether the matter has been resolved.

The Social Security Administration found that Mr. Stanley had collected and retained fees in violation of the Administration's rules, had deceived or knowingly misled his client about her benefits or other rights under the Social Security Act, and had knowingly made false or misleading statements of material fact concerning fee matters within the Administration's jurisdiction. Mr. Stanley was suspended from representing claimants before the Social Security Administration for five years. The Appeals Council for the Social Security Administration affirmed the suspension. Mr. Stanley has exhausted his right to appeal the Social Security Administration action, culminating in a decision by the U.S. Court of Appeals for the Eighth Circuit affirming a district court's dismissal of his action challenging the Social Security Administration's decision. *See Stanley v. Astrue*, 298 Fed. Appx. 537, 2008 WL 4394251 (8th Cir. [Sept. 30,] 2008) (per curiam).

### B. Disciplinary Actions Based on Revocation of VA Accreditation and Suspension of Privilege To Practice Before the Social Security Administration

#### 1. *The Arkansas Supreme Court Committee on Professional Conduct*

On June 13, 2005, the Arkansas Supreme Court Committee on Professional Conduct was advised of the action taken by VA.[4] The same office was advised of the action taken by the Social Security Administration on June 2, 2006. Based on these notifications, a panel of the Arkansas

---

[3] At all times relevant to VA's disciplinary action, 38 U.S.C. § 5904 provided in pertinent part that

> in connection with a proceeding before the Department with respect to benefits under laws administered by the Secretary, a fee may not be charged, allowed, or paid for services of agents and attorneys with respect to services provided before the date on which the Board of Veterans' Appeals first makes a final decision in the case.

38 U.S.C. § 5904(c)(1) (2000). In 2006, the law was changed to permit a representative to charge a fee for representation after the filing of a Notice of Disagreement and prior to the first final Board decision. *See* Pub. L. No. 109-461, § 101, 120 Stat. 3405-08 (2006); 38 U.S.C. § 5904(c)(1).

[4] The correspondence that VA sent to the Arkansas Supreme Court Committee on Professional Conduct reflects that VA had reason to believe that, notwithstanding the cancellation of his accreditation, Mr. Stanley was "attempting to continue to represent VA claimants." Letter from Assistant Gen. Counsel, Dep't of Veterans Affairs, to Executive Dir., Arkansas Supreme Court Comm. on Prof'l Conduct (June 13, 2005) [hereinafter VA Letter]. VA advised that it was providing the information "for any action [the Committee on Professional Conduct] deem[ed] appropriate." *Id.*

Supreme Court's Committee on Professional Conduct ordered, pursuant to Arkansas rules governing professional conduct providing for reciprocal discipline, that Mr. Stanley be suspended from the practice of law in Arkansas for a period of five years, commencing April 24, 2007. Mr. Stanley did not inform the Court of this suspension, nor did he advise the Court of the underlying VA and Social Security Administration actions. As described later in this opinion, this Arkansas suspension was ultimately rescinded.

### 2. The U.S. District Court for the Eastern District of Arkansas

On June 22, 2007, the U.S. District Court for the Eastern District of Arkansas issued an en banc decision suspending Mr. Stanley from practice before that Court. In doing so the district court imposed reciprocal discipline, suspending Mr. Stanley from practice before it for five years beginning April 24, 2007, based solely on the action of the Arkansas Supreme Court Committee on Professional Conduct. Mr. Stanley did not inform the Court of this suspension. As described later, this suspension was also ultimately rescinded.

### 3. The U.S. Court of Appeals for Veterans Claims

On May 11, 2007, based on its own reciprocal discipline rules and Mr. Stanley's suspension from practice by the Arkansas Supreme Court Committee on Professional Conduct, the Social Security Administration, and VA, the Court issued an order under docket number 07-8003 referring the matter to a panel of the Court and imposing on Mr. Stanley a temporary nondisciplinary suspension from practice before the Court until those panel proceedings concluded. U.S. VET. APP. R. ADM. & PRAC. R. 4(c), (7)(d)(1). That order also noted that Mr. Stanley had failed to inform the Court of the Federal administrative and Arkansas State actions as required by Rule 4(c) of the Court's Rules. On August 17, 2007, this Court issued a clarifying order proposing reciprocal discipline and also including the discipline imposed by the U.S. District Court for the Eastern District of Arkansas. The matter was referred to the U.S. Court of Appeals for Veterans Claims Committee on Admission and Practice on January 11, 2008. *See* U.S. VET. APP. R. ADM. & PRAC. R. 2(b).

While this matter was pending before the Court, the Clerk of the Court (Clerk) became aware that, after the May 11, 2007, order of temporary suspension, Mr. Stanley filed documents with the Court, and that Mr. Stanley's former clients–ostensibly acting pro se– also filed documents with the Court that appeared to have been prepared by Mr. Stanley. For administrative purposes, that matter was assigned docket number 07-8007. On February 12, 2008, that matter was referred to the same

4

panel for consideration, which, in turn, on April 1, 2008, referred both matters to the Committee on Admission and Practice for investigation, hearing, and recommendation.

*4. Reinstatement of Mr. Stanley by the Arkansas Supreme Court and by the*

*U.S. District Court for the Eastern District of Arkansas*

On June 19, 2008, the Arkansas Supreme Court, based on the specific language in the Arkansas rules regulating attorney conduct, found that that court's Committee on Professional Conduct had exceeded its authority by ordering reciprocal discipline on the basis of Mr. Stanley's suspension from practice by the Social Security Administration and of the cancellation of his accreditation by VA.  That court held the April 24, 2007, order of suspension null and void and reinstated Mr. Stanley's privilege to practice before Arkansas courts.  The U.S. District Court for the Eastern District of Arkansas likewise reinstated Mr. Stanley as a member of its bar.

C.  Action by this Court's Committee on Admissions and Practice

Mr. Stanley did not request a hearing before the Court's Committee on Admission and Practice (Committee).  *See* VET. APP. R. ADM. & PRAC. R. 2(d)(3).  In order to gather the necessary additional facts, the Committee submitted extensive interrogatories and requests for production of documents to Mr. Stanley.  The Committee found that Mr. Stanley responded fully to these requests. U.S. Court of Appeals for Veterans Claims Comm. on Admission and Practice, Report, Findings & Recommendations (Nov. 18, 2008) at 2 (regarding proposed discipline of James W. Stanley, member of the bar, Nos. 07-8003 & 07-8007) (Committee Report).

Based on Mr. Stanley's response to the interrogatories and on information provided by the Court, the Committee found that the facts presented three issues: (1) Whether Mr. Stanley should be disciplined reciprocally pursuant to Rule 7(a)(2) of the Court's Rules on the basis of the asserted professional misconduct giving rise to either the suspension imposed by the Social Security Administration or the cancellation of his accreditation to practice before VA, or both; (2) whether Mr. Stanley should be disciplined for his apparent violations of Rule 4(c)(1)(A), in particular, the requirement that a practitioner who has been subject to public discipline for professional misconduct notify the Court of such discipline; and (3) whether Mr. Stanley should be disciplined for engaging in the unauthorized practice of law in violation of Rule 5.5 of the American Bar Association's (ABA's) Model Rules of Professional Conduct (Model Rules) while suspended from practice before

this Court.[5]  Committee Report at 1-2.  The Court concludes that the Committee has accurately stated the three issues before the Court.

The Committee made the following findings and recommendations:

1.  On the question of whether the Court should administer reciprocal discipline based on Mr. Stanley's five-year suspension from practice before the Social Security Administration and the revocation of his accreditation to practice before VA, the Committee found that

> (a) both VA and the Social Security Administration had reached final decisions that Mr. Stanley had committed professional misconduct;

> (b) the actions for which Mr. Stanley was disciplined by VA and the Social Security Administration–improperly collecting clients' fees and misleading them as to their rights and benefits, and making false and misleading statements to them–was professional misconduct under the Court's Rules of Admission and Practice;[6] and,

> (c) there is no evidence in the record demonstrating the existence of any of the three exceptions to the administration of reciprocal discipline contained in Rule 7(a)(2).[7]

Committee Report at 6-7.  As a result of these findings, the Committee recommended that Mr. Stanley be suspended from the practice of law before this Court for a period of five years nunc pro tunc beginning on May 22, 2006, the date of his suspension by the Social Security Administration. Committee Report at 7.

2. On the question of whether Mr. Stanley should be disciplined for failure to notify the Clerk of either his five-year suspension by the Social Security Administration or the revocation of his privilege to practice before VA, or both, the Committee found that

> (a) the discipline imposed by both the Social Security Administration and VA was public discipline;

> (b) the discipline imposed by both entities was for professional misconduct; and

---

[5] The Model Rules have been adopted by the Court as "the disciplinary standard for practice" before the Court. U.S. VET. APP. R. ADM. & PRAC. R. 4(a).

[6] *See* U.S. VET. APP. R. ADM. & PRAC. R. 4(b) (defining "professional misconduct").

[7] *See* U.S. VET. APP. R. ADM. & PRAC. R. 7(a)(2)(A), (B), (C).

(c) Mr. Stanley did not comply with Rule 4(c)(1)(A), which requires him to report such action.

Committee Report at 9. Based on these findings, the Committee recommended that the Court impose a public reprimand for Mr. Stanley's failure to comply with Rule 4(c)(1)(A), but that the Court not impose any additional suspension beyond that recommended under issue one. The Committee based this recommendation in large part on a finding that Mr. Stanley "appears genuinely to have believed, albeit mistakenly, that Rule 4(c)(1)(A) was inapplicable" to these disciplinary actions. *Id.*

3. On the question of whether Mr. Stanley engaged in the practice of law before this Court while under an order of suspension, the Committee found that

(a) during the period he was suspended from practice before this Court, Mr. Stanley engaged in the practice of law before this Court by preparing a response to the designation of record in one case; and

(b) Mr. Stanley's acts of preparing other documents, filing them with the Court, and advising clients either occurred prior to his suspension or were de minimis in nature.

Committee Report at 11. Based on these findings, the Committee recommended that Mr. Stanley receive a public reprimand for engaging in the unauthorized practice of law, but that the Court not impose any additional suspension beyond that recommended under issue one. Committee Report at 12. The Committee submitted its report to the panel of the Court on November 18, 2008, and the report was provided to Mr. Stanley for comment.

D. Mr. Stanley's Rebuttal to the Committee Report

Mr. Stanley submitted a rebuttal to the Court on December 24, 2008. With regard to issue one above, Mr. Stanley argues that because the matters for which he was disciplined amount to a fair dispute over fees owed under a fee agreement, the alleged wrongdoing does not constitute professional misconduct; the disciplinary actions taken by the Social Security Administration and VA were excessive; and the five-year suspension recommended by the Committee is too severe. Rebuttal of James W. Stanley to Committee Report (Dec. 24, 2008) at 3-4 (Rebuttal). He also notes that he has an active appeal before the Board of the revocation of his VA practice privileges and has

applied to the Social Security Administration for reinstatement of his privilege to practice before that Agency. Rebuttal at 4.

With regard to issue two, Mr. Stanley argues that the disciplinary actions of the Social Security Administration and VA are not reportable, nor is there a requirement that they be published. He reasons that Rule 4(c)(1)(A) and Rule 12(b) read together define public discipline as only that discipline that appears in a public order. He argues that because neither of the disciplinary actions imposed by the Social Security Administration and VA were published, they were private actions that he was not required to report to this Court. Rebuttal at 2-3.

With regard to issue three, Mr. Stanley admits that preparing a response to a designation of the record does qualify as providing legal advice, but argues that he did not violate the Court-ordered suspension because he did not appear before the Court or file any pleadings with the Court in the matter after his suspension. Rebuttal at 6-7. Mr. Stanley would have the Court define the "practice of law" as "filing an appearance of record before a court in order to participate in court proceedings." Rebuttal at 7.

Finally, Mr. Stanley asks the Committee to "take no action other than to continue the Temporary Order of Suspension pending further documentation being submitted" regarding the appeal of his VA revocation and the outcome of his application for reinstatement before the Social Security Administration. Rebuttal at 9.

### E. Mr. Stanley's Motion for Reconsideration

On June 15, 2009, in accordance with Rule 5(d), the Court issued a proposed opinion in this matter and advised Mr. Stanley that he could file a motion for reconsideration within 21 days. On July 2, 2009, Mr. Stanley submitted his motion for reconsideration, largely reiterating his previous arguments. After careful consideration of his motion, the Court's final opinion remains largely unchanged from its proposed opinion, save some clarifying statements.

## II. ANALYSIS

To reach a conclusion on the matters before us, the Court must answer the following questions: First, were the disciplinary actions imposed on Mr. Stanley "final" for purposes of Rule 7(a)(2)? Second, was Mr. Stanley the subject of "public discipline" under Rule 4(c)(1)(A)? Finally,

8

was Mr. Stanley engaged in the "practice of law" before this Court within the meaning of the Model Rules of Professional Conduct?

### A. No. 07-8003: Reciprocal Discipline and Failure To Notify

#### 1. Reciprocal Discipline

Rule 7(a) provides, in pertinent part:

(2) Credible evidence of a *final determination* in another court or government entity that a practitioner has committed and been disciplined for professional misconduct is conclusive proof of that fact for purposes of a disciplinary proceeding in the Court unless the Court determines, by clear and convincing evidence, that:

> (A) The prior procedure was so lacking in notice or opportunity to be heard that it constituted a deprivation of due process; or

> (B) there was such an infirmity of proof as to the misconduct that the Court could not, consistent with its duty, accept as final the conclusion on that subject; or

> (C) the imposition of discipline by the Court would result in a grave injustice.

U.S. VET. APP. R. ADM. & PRAC. R. 7(a)(2) (emphasis added). After the Court receives such evidence, and after certain procedural actions take place,[8] the Court may impose any reciprocal discipline that it "determines is appropriate." *Id.* at R. 7(d)(3)(C).

On the issue of reciprocal discipline, Mr. Stanley makes three arguments: First, he appears to assert that the conduct that led to the cancellation of his accreditation by VA and his suspension from practice before the Social Security Administration does not rise to the level of professional misconduct; he characterizes the issues as mere "fee disputes." *See* Rebuttal at 3-5. Second, Mr. Stanley contends that neither disciplinary action is "final" within the meaning of Rule 7(a). He states that he has appealed the VA action to the Board, and that the matter remains pending. Rebuttal at 4. Similarly, he states that he has sought reinstatement before the Social Security Administration and that no decision has been reached on his application for reinstatement. *Id.* Third, he contends

---

[8] In this case, these procedures included providing notice to Mr. Stanley of the evidence received; issuing a temporary, nondisciplinary suspension from practice before the Court; issuing an order directing Mr. Stanley to show cause why reciprocal discipline should not be imposed; referring the matter to the Committee; and permitting Mr. Stanley to submit a rebuttal to the Committee Report. *See generally* U.S. VET. APP. R. ADM. & PRAC. R. 7; *see also* U.S. VET. APP. R. ADM. & PRAC. R. 2(d) (General Rights of the Practitioner Concerned).

that the sanctions imposed by VA and the Social Security Administration were excessive in relation to the nature of the violations. Rebuttal at 3-4. He argues that the Committee's recommended sanction–a concurrent five-year suspension from the practice of law before the Court–is therefore inappropriate and urges the Court to simply continue his temporary, nondisciplinary suspension and not impose formal disciplinary action until each of the matters is final before the respective agencies.[9] Rebuttal at 6.

### a. Professional Misconduct

Pertinent to the matters now before the Court, "professional misconduct" is defined as "an act or omission that resulted in discipline by another jurisdiction at any time after the practitioner's admission to practice before the Court." U.S. VET. APP. R. ADM. & PRAC. R. 4(b)(1)(B). VA determined that Mr. Stanley had received illegal fees from veterans as payment for representation before VA prior to the veterans' receiving final decisions on their respective claims from the Board. The Social Security Administration found that Mr. Stanley had charged, collected, and retained fees in violation of Agency rules; had deceived or knowingly misled his client about her benefits or other rights under the Social Security Act; and had knowingly made false or misleading statements of material fact concerning fee matters within the Social Security Administration's jurisdiction. Even were the Court to agree with Mr. Stanley's characterization of his actions and of the disputes before the Agencies as simple "fee disputes," there can be no doubt that his actions were acts or omissions that "resulted in discipline by another jurisdiction,"[10] and therefore rise to the level of professional misconduct under the Court's Rules. *Id.*

### b. Finality of Disciplinary Action Taken by "Another Court or Government Entity"

---

[9] Mr. Stanley also appears to assert that, because neither the Social Security Administration nor VA can license attorneys to practice law, neither Agency's disciplinary action is entitled to reciprocity in this Court. *See* Rebuttal at 1-2. However, because the Court's Rules specifically include disciplinary action taken by "another court or *government entity*," his argument is without merit. U.S. VET. APP. R. ADM. & PRAC. R. 7(a)(2) (emphasis added).

[10] Under our Rules, the term "jurisdiction" includes government entities. *See* U.S. VET. APP. R. ADM. & PRAC. R. 13(b) ("Notification to Other *Jurisdictions*. Following the issuance of an order imposing discipline, as prescribed in Rule 5(e), and subject to subsection (d) below, the Clerk will promptly mail a certified copy of the order imposing public discipline to another court *or other governmental entity* if there is reason to believe that the practitioner is admitted to practice before that court or entity." (emphasis added)).

The only remaining question to be answered in determining whether reciprocal discipline is appropriate is whether the disciplinary actions taken by the Social Security Administration and VA were final in May 2007 when the Court received notice of them. Rule 7 provides that, after the Court receives credible evidence of final disciplinary action taken by another court or government entity, the Clerk will, if the disciplinary action imposed is suspension or disbarment, immediately impose on the disciplined practitioner a temporary, nondisciplinary suspension from practice before the Court. U.S. VET. APP. R. ADM. & PRAC. R. 7(d)(1)(B). The matter is then referred to a panel of judges for consideration. *Id.* The purpose of this provision is to protect from potential harm appellants or petitioners with matters before the Court who are already represented by the disciplined practitioner, or those who might seek to retain the disciplined practitioner's services in matters before the Court, while the Court investigates the evidence of disciplinary action. *See* ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS III.A.1.1 (2005) (The purpose of lawyer discipline "is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely to properly discharge their professional duties to clients, the public, the legal system, and the legal profession").

Mr. Stanley argues that a disciplinary action is not final until all avenues of appeal have been exhausted, both administratively and judicially. If Mr. Stanley's definition of "final" is correct, the carefully crafted procedural safeguards of Rule 7 would be inapplicable and irrelevant for possibly many years after the Court first receives notice of another court's or government entity's disciplinary action, during often lengthy administrative and judicial appeals. In the meantime, the disciplined practitioner would remain free to represent appellants or petitioners before the Court, despite having been found not to possess the requisite character to do so. The Court simply does not agree that such a definition–one that would require the Court to accept such an infringement on its ability to regulate the conduct of attorneys admitted to practice before it–is what is intended by the term "final" in this context.

The finality referred to in Rule 7 is the finality of the underlying disciplinary action. Undoubtedly, then, the entity imposing the disciplinary action is the only arbiter of the finality of a given disciplinary action. Moreover, an agency or disciplinary authority's determination that a decision regarding disciplinary action is final generally corresponds to the effective date of the

11

sanction imposed. The Court's reliance on this date to determine finality for the purposes of the Court's Rules ensures that the Court can balance its need to appropriately regulate its practitioners with its duty to ensure that appellants or petitioners are protected from practitioners whose fitness to practice before the Court has been called into question by actions in other courts or government entities. Because a disciplinary action is not considered final under the Court's Rules where the disciplining authority has not yet enforced the sanction, it follows that the Court cannot impose a temporary suspension and begin its investigation of the practitioner where there is still a reasonable possibility that the disciplining authority may not impose the sanction. Once the disciplining authority carries out the sanction, however, the action is considered final, and the balancing of harms weighs in favor of protecting appellants or petitioners. We think it clear, then, considering the purpose of our rule, that any question regarding the finality of an underlying disciplinary action is resolved by examining the pertinent rules or regulations governing the disciplining authority to determine when the disciplinary action became final in the view of the disciplining authority.

The relevant Social Security Administration's regulation provides that "[t]he hearing officer's decision is final and binding unless reversed or modified by the Appeals Council upon review." 20 C.F.R. § 404.1770 (2006). The Social Security Administration also provides for suspension of the imposition of a sanction should the practitioner appeal the hearing officer's decision. *See* 20 C.F.R. § 404.1790(c) (2008) ("If the Appeals Council affirms or changes a hearing officer's decision, the period of suspension or the disqualification is effective from the date of the Appeals Council's decision."). In the case of the Social Security action, then, Mr. Stanley's suspension was final for the purposes of our Rules as of May 22, 2006, when the Appeals Council affirmed the hearing officer's decision. Mr. Stanley's argument that the Social Security action is not final because his application for reinstatement remains pending is therefore without merit. Because the Court was notified of the Social Security action after it became final, it is within the Court's power to impose reciprocal discipline for that action if it determines that such discipline is appropriate.

At the time of the VA action, the pertinent VA regulation in effect stated: "The decision of the General Counsel is final. The effective date for termination of accreditation shall be the date

12

upon which a final decision is rendered."[11]  38 C.F.R. § 14.633(g) (2001).  This means that the cancellation of Mr. Stanley's accreditation was final as of October 10, 2001, when the General Counsel affirmed the hearing officer's decision.  Because the Court was notified of the VA action after the action became final, it is within the Court's power to impose reciprocal discipline for that action if it determines that such discipline is appropriate.

c. Imposition of Reciprocal Discipline as "Grave Injustice"

Having determined that Mr. Stanley committed and was disciplined for professional misconduct and that both the Social Security Administration and VA actions were final determinations, in accordance with Rule 7, the Court must now consider whether to impose reciprocal discipline and, if so, what level of discipline is appropriate.

As noted above, Rule 7 provides that "[c]redible evidence of a final determination in another court or government entity that a practitioner has committed and been disciplined for professional misconduct is conclusive proof of that fact for purposes of a disciplinary proceeding in the Court" unless there is clear and convincing evidence that either the "prior procedure was so lacking in notice or opportunity to be heard that it constituted a deprivation of due process," or "there was such an infirmity of proof as to the misconduct that the Court could not, consistent with its duty, accept as final the conclusion on that subject," or "the imposition of discipline by the Court would result in a grave injustice."  U.S. Vet. App. R. Adm. & Prac. R. 7(a)(2).

Mr. Stanley appears to argue that the third of these exceptions applies to him, that is, that it would result in a "grave injustice" if the Court were to impose the Committee's recommended

---

[11] The current regulation provides:

> The decision of the General Counsel is a final adjudicative determination of an agency of original jurisdiction and may be appealed to the Board of Veterans' Appeals. The effective date for cancellation of accreditation or authority to provide representation on a particular claim shall be the date upon which the General Counsel's final decision is rendered.

38 C.F.R. § 14.633(h) (2008).  The Court also notes that, although the regulation did not expressly allow for an appeal of the General Counsel's decision to the Board until 2008, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held in February 2005 that a VA decision to suspend or cancel a practitioner's accreditation is subject to review by the Board. *See Bates v. Nicholson*, 398 F.3d 1355, 1365-66 (Fed. Cir. 2005).  The Court acknowledges that Mr. Stanley has appealed his case to the Board, and notes that the matter remains pending.  However, his appeal is an administrative remedy, and the Court has already determined that exhaustion of administrative remedies is not required to render a disciplinary action "final" under our Rules.

sanction of a five-year suspension from practice before the Court, to run concurrently with his suspension from practice before the Social Security Administration. Rebuttal at 4; *see also* Committee Report at 7. Although the Court may impose the discipline it considers "appropriate," U.S. VET. APP. R. ADM. & PRAC. R. 5(a), 7(d)(3)(C), including a sanction lesser than that imposed by the entity levying the underlying discipline or than that recommended by the Committee, Mr. Stanley does not explain how the imposition of the recommended suspension would be a grave injustice. Instead, he merely contends that the sanctions levied by the Social Security Administration and VA were excessive in relation to his conduct, ignoring the fact that the question of whether his actions merited such disciplinary action by those Agencies is not before the Court. In fact, that question is a matter left wholly to the discretion of the Agencies and is one that has been, at least in the case of the Social Security action, exhausted both administratively and judicially. In the case of the VA action, the matter is under administrative review pursuant to Mr. Stanley's right to appeal the General Counsel decision under *Bates*, 398 F.3d at 1365-66, but that fact alone–particularly given that VA has not suspended the cancellation of Mr. Stanley's accreditation while his appeal is pending–does not render it a grave injustice for the Court to impose the sanction recommended by the Committee. In the absence of any other argument on the matter, the Court concludes that the imposition of discipline by the Court would not result in a grave injustice. U.S. VET. APP. R. ADM. & PRAC. R. 7(a)(2)(C).

### d. Imposition of Reciprocal Discipline

As a consequence of the disciplinary actions taken against Mr. Stanley by the Social Security Administration and VA, the Committee recommended that the Court suspend Mr. Stanley from the practice of law before the Court for a period of five years, effective nunc pro tunc to May 22, 2006, the date of his suspension from practice before the Social Security Administration. Committee Report at 7. The Committee further recommended that the Court allow for the possibility of Mr. Stanley's reinstatement "upon expiration of the five-year period or before upon application and, together with other such evidence as the Court may wish to require, proof that [Mr. Stanley] has been reinstated by the [Social Security Administration] or VA prior to the expiration of the five-year period." *Id.* The Court has carefully considered the Committee's recommendation and will adopt it as modified below.

14

First, the Court will terminate the nondisciplinary suspension imposed on May 11, 2007. Next, the Court has determined that, in light of the seriousness of the conduct underlying both the Social Security Administration and VA actions, it is appropriate to suspend Mr. Stanley from practice before the Court until May 22, 2011, the date on which his suspension from practice before the Social Security Administration expires.[12] U.S. VET. APP. R. ADM. & PRAC. R. 7(d)(3)(C). Mr. Stanley may resume practice before the Court upon the expiration of this suspension "only after filing with the Clerk an affidavit that he . . . has been reinstated by" the Social Security Administration and VA. U.S. VET. APP. R. ADM. & PRAC. R. 11(a)(2). Along with that affidavit, the Court will require Mr. Stanley to produce evidence of his completion–within the one year prior to his application for reinstatement–of at least six hours of ethics training regarding, in particular, the Model Rules of Professional Conduct. *See* U.S. VET. APP. R. ADM. & PRAC. R. 5(a)(1). If Mr. Stanley desires to apply for reinstatement prior to the expiration of this suspension, he must submit, along with the documentation described above regarding ethics training, evidence that he has been reinstated to practice before both the Social Security Administration and VA.

### 2. Failure To Notify

Rule 4(c) of the Court's Rules of Admission and Practice provides:

(1) A practitioner must, not later than ten days after the occurrence, provide written notification to the Clerk, to all clients presently represented before the Court, and to all adverse parties in those cases of any of the following actions regarding that practitioner:

(A) Public discipline for professional misconduct.

U.S. VET. APP. R. ADM. & PRAC. R. 4(c)(1)(A).[13] As discussed above, the Court has determined that the conduct for which Mr. Stanley was disciplined by the Social Security Administration and VA constitutes professional misconduct. It is also undisputed that Mr. Stanley did not advise the Court

---

[12] The length of Mr. Stanley's suspension from practice before the Court, then, is four years and 11 days. The Court declines to make the suspension effective nunc pro tunc to May 22, 2006, because doing so might call into question any practice before the Court in which Mr. Stanley engaged between May 22, 2006, and May 11, 2007, when his temporary suspension from practice before the Court went into effect.

[13] At the time of the cancellation of Mr. Stanley's accreditation by VA, this rule appeared at Rule 10(a) of the Court's Rules. *See* U.S. VET. APP. R. ADM. & PRAC. R. 10(a) (effective Aug. 1, 1992). Although its language differed from that of the current Rule, it was, in substance, the same.

15

of his suspension from practice before the Social Security Administration or of the cancellation of his accreditation by VA. However, Mr. Stanley asserts that he was not required to report either action because neither action constitutes "public" discipline within the meaning of Rule 4. Rebuttal at 2-3. Specifically, he argues that"[b]oth cases involved records of particular individuals that were covered by the Privacy Act,"[14] that "Social Security procedures are not subject to disclosure," and that "VA matters are likewise not subject to disclosure." Rebuttal at 2. He further argues that "public" means "published in a newspaper of general circulation, . . . compiled in a legal journal, . . . press release or any type of documentation that would have been available to the media." *Id.* Because Mr. Stanley contends that the meaning of the word "public" in Rule 4(c)(1)(A) is limited to the actual publication of the disciplinary action, we now take this opportunity to explain that the meaning of this common word is, in fact, not so limited. We will do so in some detail, and with reference to both the rule's purpose and to its application to situations commonly encountered by members of the Court's bar.

a. Definition of "Public Discipline"

The ABA recommends that lawyer discipline be public "in cases of disbarment, suspension, and reprimand," and private "only in cases of minor misconduct, when there is little or no injury to the client, the public, the legal system, or the profession, and when there is little likelihood of repetition by the lawyer." ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS III.A.1.2 (2005). The purpose of public discipline, then, is to make the interested members of the populace aware that an attorney has been found to have committed an act of professional misconduct and to advise the public of the circumstances from which that discipline flows. This information may then be used by the interested public in deciding whether to retain a particular attorney in a particular matter.

Our rule requiring that only the imposition of public discipline be reported to this Court is meant to ensure that private reprimands issued for professional misconduct, which are often cautionary in nature, remain a matter between the disciplining authority and the disciplined attorney. By limiting the reporting requirement to public discipline, the Court respects the judgment of the

---

[14] The Privacy Act, 5 U.S.C. § 552a, provides, in pertinent part, that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains," except in certain enumerated circumstances. 5 U.S.C. § 552a(b).

disciplining authority and promotes the improvement of the practice of law by permitting the disciplining authority to call the practitioner's attention to his errors in judgment or action without imposing unduly harsh punishment.

Turning to the meaning of the word "public," we note that courts have traditionally derived reasonable definitions of terms by considering the ordinary meaning of the words in question. *Public Citizen Inc. v. Mineta*, 343 F.3d 1159, 1167 (9th Cir. 2003). In this regard, the word "public" is variously defined as "open or available for all to use, share, or enjoy," BLACK'S LAW DICTIONARY 1242 (7th ed. 1999) [hereinafter BLACK'S]; "known by, or open to the knowledge of, all or most people," WEBSTER'S NEW WORLD DICTIONARY 1087 (3d ed. 1988); or "accessible to or shared by all members of the community," WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 952 (1990). The word "publication" is defined as "the act of declaring or announcing to the public." BLACK'S at 1242.

Considering these general definitions and the purposes of our rule, we think that the common understanding of the term "public" makes it clear that to be "public discipline" within the meaning of Rule 4(c)(1)(A), the terms, conditions, and underlying facts supporting the discipline for professional misconduct must be available in a form accessible by those members of the public who might reasonably have an interest in such information. This includes those members of the public who might seek to retain the services of the disciplined attorney; other attorneys practicing in the jurisdiction where the attorney was disciplined; and the jurisdictions, courts, agencies, or other entities before whom the disciplined attorney is admitted to practice.[15] With this definition in mind, we now analyze the disciplinary actions imposed by VA and the Social Security Administration and determine whether those actions were, in fact, public, and if so, whether Mr. Stanley had reason to know that the actions were public. We therefore begin with the Agencies' rules governing attorney discipline.

---

[15] Public discipline also includes, but is not limited to, the actual publication of disciplinary proceedings or disciplinary actions in a newspaper, legal journal, or other publication under the laws, regulations, or other rules governing the disciplining authority's actions; disciplinary action that is affirmatively disclosed by the disciplinary authority to other agencies, courts, or State bars in which the attorney being disciplined is admitted to practice; and disciplinary action which is, as routine practice, disclosed by the disciplining authority to members of the public who inquire about the disciplinary record of a particular attorney. Disciplinary action that is expressly deemed private by the disciplining authority is not considered public discipline, notwithstanding any disclosure agreed to by the attorney and the disciplining authority.

17

b. Cancellation of Accreditation by VA

VA regulations currently provide that, when an attorney's accreditation is cancelled, the VA Office of the General Counsel "*may* notify all agencies, courts, and bars to which the agent or attorney is admitted to practice."[16] 38 C.F.R. § 14.633(i) (2008) (emphasis added). In October 2001, however, § 14.633 contained no notification provision whatsoever. 38 C.F.R. § 14.633 (2001); *see also* Accreditation of Agents and Attorneys; Agent and Attorney Fees, Proposed Rule, 72 Fed. Reg. 25,930, 25,933 (May 7, 2007) ("[W]e propose in § 14.633(h) [now § 14.633(i)] to provide notice, *at the discretion of the General Counsel*, of any suspension or cancellation of VA accreditation to the courts, bars, agencies, or jurisdictions in which the agent or attorney is admitted to practice." (emphasis added)). Accordingly, under the VA regulations then in effect, Mr. Stanley would have had no reason to believe that the disciplinary action taken against him would be disclosed–that is, made public. Therefore, that action would not be considered public for the purposes of the Court's Rules. Consequently, the Court finds that Mr. Stanley was under no obligation to report the VA's cancellation of his accreditation to the Court in October 2001.[17]

At this time, the Court need not address whether any cancellation or suspension of accreditation by VA imposed since the discretionary notice provision was added to § 14.633 constitutes public discipline within the meaning of the Court's Rules because to do so in this matter would be dicta. However, the Court, in light of the great overlap between VA-accredited attorneys and members of the Court's bar, would suggest that VA change its procedures to make reporting the revocation of accreditation mandatory when the action becomes final for VA purposes, at least with respect to this Court.

---

[16] The Court notes that VA also maintains a searchable database of accredited attorneys on its Web site. *See* http://www.va.gov/ogc/apps/accreditation/index.html. A search of the database only results in the names of accredited attorneys, however; it does not reveal that a particular attorney's accreditation has been cancelled.

[17] The Court need not address whether the discipline became public for the purposes of our Rules in June 2005 when VA informed the Arkansas Supreme Court Committee on Professional Responsibility of the October 2001 action: § 14.633 had not yet been amended to include a notification provision, so Mr. Stanley could still not have been aware that his discipline might be made public. *See Morris v. Derwinski*, 1 Vet.App. 260, 265 (1991) ("The Supreme Court has held that everyone dealing with the Government is charged with knowledge of federal statutes and lawfully promulgated agency regulations." (citing *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85 (1947))); 38 C.F.R. § 14.633 (2005).

c. Suspension from Practice by the Social Security Administration

The Social Security Administration permits disclosure for "routine use" to inform (1) "a claimant/beneficiary that his/her representative has been disqualified/suspended from further representation before the Social Security Administration," (2) "a claimant/beneficiary who may want to hire a disqualified/suspended individual as his/her representative that the individual has been disqualified/suspended from further representation before the Social Security Administration," and (3) "a State bar disciplinary authority in the State(s) in which a disqualified/suspended attorney is admitted to practice that the Social Security Administration (SSA) has disqualified/suspended the attorney from further practice before SSA and, upon request, further information concerning the disqualification/suspension."[18] Representative Disqualification/Suspension Information System, System No. 60-0219, Routine Use No. 3, 71 Fed. Reg. 1838 (Jan. 11, 2006). It was under this authority that the Social Security Administration informed the Arkansas Supreme Court Committee on Professional Conduct that it had suspended Mr. Stanley. *See* Letter from Office of the Gen. Counsel, Social Security Administration, to Executive Dir., Arkansas Supreme Court Committee on Professional Conduct at 1 [hereinafter Social Security Letter] (June 5, 2006) ("We refer this matter to you based on a routine use disclosure that [the Social Security Administration] has published."); *id.* at n.1. Further, the Social Security Administration's Office of Disability Adjudication and Review's Hearings, Appeals and Litigation Law Manual (HALLEX)[19] provides that when an attorney is disqualified or suspended from acting as a representative before the Agency, the Office of General Law "*will* provide a copy of the final Agency action suspending or disqualifying the attorney to the disciplinary section of the bar association in every State or Territory in which the attorney is admitted to practice." HALLEX, Vol.1, Ch. I-1-1-50 B.9, *available at* http://www.socialsecurity.gov/OP_Home/hallex/I-01/I-1-1-50.html (last visited Mar. 3, 2009) (emphasis added).

---

[18] The Social Security Administration also provides for notification to governmental entities, such as the Department of Justice, congressional offices, the General Services Administration, and the Secretary of Health and Human Services. Social Security Administration, Representative Disqualification/Suspension Information System, System No. 60-0219, Routine Use No. 3, 71 Fed. Reg. 1838 (Jan. 11, 2006), *available at* http://www.ssa.gov/foia/bluebook/60-0219.htm.

[19] Available online at http://www.socialsecurity.gov/OP_Home/hallex/hallex.html.

Given that the Social Security Administration's procedures provide for affirmative, mandatory notification to the state bar disciplinary sections, it is clear that the suspension imposed by the Agency in this case is public under any definition of the word, and certainly under the definition the Court clearly articulates today.[20] *See* HALLEX, Vol.1, Ch. I-1-1-50 B.9; *New Eng. Tank Indus. of N.H., Inc. v. United States*, 861 F.2d 658, 694 (Fed. Cir. 1988) (holding that "will" is a mandatory, as opposed to discretionary, term). Mr. Stanley, as a practitioner before the Social Security Administration, is charged with knowledge of the rules and regulations affecting his ability to represent claimants before the Agency, and therefore is presumed to have known that the Social Security Administration would report his suspension to the Arkansas State Bar. *See Morris*, 1 Vet.App. at 265. Accordingly, as the Committee found, Mr. Stanley was under an obligation to report his suspension from practice before the Social Security Administration to the Court, and his failure to do so is a violation of this Court's Rules. As a consequence for failing to notify the Court of his suspension before the Social Security Administration, the Committee recommended that the Court impose a public reprimand of Mr. Stanley. The Court agrees that such a penalty is proper and hereby adopts the Committee's recommendation.

### B. No. 07-8007: Unauthorized Practice of Law

#### *1. Definition of "Practice of Law"*

Rule 4(a) provides that the Model Rules constitute the "disciplinary standard for practice" before the Court. U.S. VET. APP. R. ADM. & PRAC. R. 4(a). Rule 4(b)(1)(A) further provides that "professional misconduct" is "an act or omission that violates the Court's disciplinary standard." Therefore, any act or omission on the part of a practitioner that violates the Model Rules also constitutes professional misconduct in this Court. Model Rule 5.5(a) prohibits an attorney from practicing law in a jurisdiction "in violation of the regulation of the legal profession in that

---

[20] The Court acknowledges that the Social Security Administration's *routine use* disclosures are discretionary, much like VA's. However, the Court notes that the Social Security Administration, unlike VA, affirmatively–and almost immediately–informed the Arkansas Supreme Court of Mr. Stanley's suspension and did so expressly under its routine use disclosure, while VA did not notify the Arkansas Supreme Court of its October 2001 action until June 2005. *See* Social Security Letter at 1 (June 2, 2006, letter from the Social Security Administration advising the Arkansas Supreme Court of the May 22, 2006, proceedings resulting in Mr. Stanley's suspension); VA Letter at 1. Moreover, the Court rests its determination that the Social Security Administration action was public on the Social Security Administration's procedural mandate that suspensions or disqualifications of attorneys "will" be provided to state bars. HALLEX, Vol.1, Ch. I-1-1-50 B.9.

jurisdiction."  MODEL RULES OF PROF'L CONDUCT R. 5.5(a) (2007).  It is not disputed that if Mr. Stanley engaged in the practice of law before the Court after the enactment of his temporary suspension, he has committed professional misconduct within the meaning of the Court's Rules. What is disputed is whether the actions in which Mr. Stanley engaged constitute "the practice of law."

The actions potentially constituting engagement in the unauthorized practice of law for which Mr. Stanley was investigated include preparing briefs for clients who filed those briefs while acting pro se, counseling clients regarding their appearances before the Court, preparing an application for attorney fees that was filed by the client while acting pro se, and preparing a reply to a designation of the record for a client who filed that reply while acting pro se.  Mr. Stanley contends that these actions do not amount to the practice of law; indeed, he argues that the "practice of law" is properly limited to appearing before the Court or filing pleadings on behalf of clients.  Rebuttal at 6.

The Model Rules do not define the practice of law, but simply state that "the practice of law is established by law and varies from one jurisdiction to another."  MODEL RULES OF PROF'L CONDUCT R. 5.5 cmt. (2007).  The Federal caselaw on the matter generally holds that preparation of legal documents is considered the practice of law and may only be performed by licensed attorneys in good standing.  In 1990, the U.S. Court of Appeals for the Third Circuit (Third Circuit) found that a survey of state court decisions "indicate[d] that the practice of law is not limited to appearances in court and the signing of pleadings."  *In re Mitchell*, 901 F.2d 1179, 1183-84 (3d Cir. 1990). The Third Circuit concluded that

> an attorney suspended from the bar of this court can have no contact with this court, its staff, or a client in any proceeding before this court, except if the attorney is representing only himself or herself as a party, but may act as a law clerk or legal assistant under the close supervision of a member in good standing of the bar of this court.

*Id.* at 1181.

Since then, several other circuit courts of appeal have addressed the issue.  The U.S. Court of Appeals for the Fifth Circuit has held that the "'practice of law embraces in general all advice to clients and all actions taken for them in matters connected with the law.'" *SMWNFP Holdings, Inc. v. Devore*,165 F.3d 360, 368 (5th Cir. 1999) (quoting *Brown v. Unauthorized Practice of Law*

21

*Comm.*, 742 S.W.2d 34, 41 (Tex. Ct. App. 1987)). The U.S. Court of Appeals for the Seventh Circuit (Seventh Circuit) has held that "the practice of law includes, at a minimum, representation provided in court proceedings along with any services rendered incident thereto, even if rendered out of court." *United States v. Johnson*, 327 F.3d 554, 561 (7th Cir. 2003). The U.S. Court of Appeals for the Ninth Circuit (Ninth Circuit) concluded that, "at a minimum 'the "practice of law" means the exercise of professional judgment in applying legal principles to address another person's individualized needs through analysis, advice, or other assistance.'" *Taub v. Weber*, 366 F.3d 966, 970 (9th Cir. 2004) (quoting *Or. State Bar v. Smith*, 942 P.2d 793, 800 (Or. App. 1997)). It is clear to the Court that the preparation of legal documents and pleadings, including those at issue in this matter–briefs, an application for attorney fees, and a response to a designation of the record–is widely considered to constitute the practice of law.

It is also clear that the act of advising clients regarding their appearances before a court constitutes the practice of law. The Seventh Circuit stated that "providing *any* advice or other service 'requiring the use of any legal skill or knowledge, . . . the legal effect of which, under the facts and conditions involved, must be carefully determined,' amounts to practicing law." *Johnson*, 327 F.3d at 561 (quoting *People v. Peters*, 141 N.E.2d 9, 11 (N.Y. 1957)). As noted above, the Ninth Circuit found that "applying legal principles to address another person's individualized needs through . . . advice" constitutes the practice of law. *Taub*, 366 F.3d at 800; *see also SMWNFP*, 165 F.3d at 368. Accordingly, when a practitioner is suspended from practice before this Court, he violates this Court's Rules when he advises an appellant regarding any aspect of the appellant's appearance before this Court. This includes advising appellants about the contents of their submissions to this Court.

The Court notes that its determination that Mr. Stanley's acts constitute the practice of law within the meaning of the Court's Rules is in no way intended to limit the meaning of the "practice of law." Obviously, other acts not at issue in this matter also constitute the practice of law, such as filing an appearance on behalf of an appellant, arguing before the Court, and submitting pleadings and other documents on behalf of an appellant. There may also be other acts that constitute the practice of law, and we do not intend this list to be exhaustive.

22

## 2. Unauthorized Practice of Law

The remaining question is whether Mr. Stanley committed any of these acts after May 11, 2007, the date on which his temporary suspension from practice before the Court began.[21] If so, those acts constitute the unauthorized practice of law, and Mr. Stanley violated the Court's Rules. In his answers to the Committee's interrogatories, Mr. Stanley asserted that the briefs he prepared that are at issue here were completed in April 2007, prior to his suspension. Answers at 11-12, 14. He further asserted that any advice he gave to his clients in those matters after the effective date of his suspension was de minimis and that he did not receive any compensation for his work in those cases. *Id.* He stated that he encouraged his clients to file the briefs he had prepared so as to not delay their cases unnecessarily. *Id.* Regarding the application for attorney fees, Mr. Stanley stated that he prepared the application for work he performed for the client prior to his suspension and that he did not provide any advice to the client regarding that application. Answers at 16. With respect to the response to the designation of the record, Mr. Stanley conceded that he prepared the document after his suspension was enacted, but contended that this did not constitute the unauthorized practice of law because he was admitted to practice before other courts, including the Federal Circuit. Answers at 18. This appears to be a concession by Mr. Stanley that the preparation of this document

---

[21]Although this instance is the first in which the Court has discussed the meaning of the term "practice of law" for members of its bar, the Court does not believe that applying this definition in this matter is unfair in any way. As noted above, the Federal law on the matter is generally universal in finding that the acts at issue here constitute the practice of law. Moreover, Arkansas, where Mr. Stanley holds a license to practice law, has long held that these kinds of actions constitute the practice of law:

> We do hold however that when one appears before a court of record for the purpose of transacting business with the court in connection with any pending litigation or when any person seeks to invoke the processes of the court in any matter pending before it, that person is engaging in the practice of law. . . . Courts are constituted for the purpose of interpreting and administrating the laws passed by the law making body and the rules announced by the judiciary, and they must necessarily be governed in their operation by rules of procedure. Attorneys are officers of the court and are able by special training and practice to know the law and rules of procedure, and are thereby in position to render a service to the court. Therefore any one who assumes the role of assisting the court in its process or invokes the use of its mechanism is considered to be engaged in the practice of law.

*Ark. Bar Ass'n v. Union Nat'l Bank of Little Rock*, 273 S.W.2d 408, 411 (Ark. 1954). In Arkansas, "[i]t is uniformly held that many activities, such as writing and interpreting wills, contracts, trust agreements and the giving of legal advice in general, constitute practicing law." *Clarendon Am. Ins. Co. v. Hickok*, 257 S.W.3d 43, 45-46 (Ark. 2007) (citing *Ark. Bar Ass'n*, 273 S.W.2d at 411-12). Moreover, Section 22( C)(1) of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law provides that a suspended attorney "shall have no contact with clients." Accordingly, Mr. Stanley ought to have known that he was engaging in "the practice of law."

constituted the practice of law, as well as an argument that he did not engage in the *unauthorized* practice of law in preparing this document because he was authorized to practice law in other jurisdictions. Mr. Stanley also stated his belief, based on an opinion by the ABA Standing Committee on Ethics and Professional Responsibility,[22] that "ghost writing" legal documents for clients was not improper and need not necessarily be disclosed to the tribunal. *Id.*

The Committee determined that the preparation of briefs, the preparation of an application for attorney fees, and any advice given to those clients by Mr. Stanley were either completed prior to May 11, 2007, or were de minimis in nature, such that no discipline should be imposed. The Court accepts and adopts the Committee's recommendations in this regard.

Regarding the remaining allegation, the Committee determined that Mr. Stanley's preparation of the response to the designation of the record after his suspension from practice before the Court constituted the unauthorized practice of law. Committee Report at 11. The Court agrees. Whether or not Mr. Stanley was authorized to practice before any other Court at the time he prepared the document is irrelevant, given that the document was prepared with the intent that it would be filed with *this* Court, where he was not authorized to practice. Further, Mr. Stanley's reliance on the ABA opinion is misplaced, given that the opinion does not address the "ghost writing" of documents by practitioners who have been suspended from practice before the tribunal with which the document is to be filed. Moreover, because we have already determined that the preparation of documents constitutes the practice of law, it makes no difference that it was the appellant, rather than Mr. Stanley himself, who filed the document with the Court, as Mr. Stanley argues in his motion for reconsideration. As a consequence for engaging in the unauthorized practice of law before the Court, the Committee recommended that the Court impose a public reprimand of Mr. Stanley. The Court agrees that such a penalty is proper and hereby adopts the Committee's recommendation.

### III. CONCLUSION

Upon consideration of the foregoing, regarding docket number 07-8003, Mr. Stanley is suspended from practice before this Court until May 22, 2011, based on his suspension from practice

---

[22] ABA Standing Comm. on Ethics and Prof'l Responsibility, Formal Opinion 07-466, Undisclosed Legal Assistance to Pro Se Litigants (May 5, 2007).

before the Social Security Administration and the revocation of his accreditation by VA. In accordance with Rule 11(a)(2), Mr. Stanley may resume practice before the Court upon the expiration of this suspension "only after filing with the Clerk an affidavit that he . . . has been reinstated by" the Social Security Administration and VA. Along with that affidavit, he must submit documentation of his completion, *subsequent to the date of this opinion* and within the one year prior to his application for reinstatement, of at least six hours of ethics training regarding, in particular, the Model Rules of Professional Conduct.[23] If Mr. Stanley desires to apply for reinstatement prior to the expiration of this suspension, he must submit evidence that he has been reinstated to practice before both the Social Security Administration and VA, as well as the documentation described above regarding ethics training. Further, Mr. Stanley is hereby reprimanded for failing to report his suspension from practice before the Social Security Administration to the Court as required by Rule 4(c)(1)(A).

Regarding docket number 07-8007, Mr. Stanley is reprimanded for engaging in the unauthorized practice of law while under an order of suspension from practice before the Court, in violation of Rule 5.5 of the Model Rules.

DATED:  July 28, 2009                                        PER CURIAM.

Copy to:

James W. Stanley

---

[23] The Court notes with consternation Mr. Stanley's transparent attempt to circumvent this requirement by contending in his motion for reconsideration that he "has addressed the [C]ourt's concerns over his need to take six hours of courses on professional responsibility." Motion for Reconsideration at 8. In a separate filing, Mr. Stanley provided a list of Continuing Legal Education courses he has completed since February 4, 2005. Although the italicized portion of this statement was not included in the proposed opinion, the Court believes that it was nevertheless clear in its directive that the required ethics courses be taken in the one year prior to Mr. Stanley's application for reinstatement to practice before this Court. Given that Mr. Stanley has not yet applied for reinstatement (and may not, as he has not been reinstated by either VA or the Social Security Administration)–a clear condition that determines the one-year look back period–he simply cannot have completed the required courses. Moreover, the Court reminds Mr. Stanley that not just any Continuing Legal Education courses will do; the requirement is that the courses focus on the Model Rules of Professional Conduct or similar topics.